OPINION
Defendant-Appellant Kim Allen Shockey was convicted of two counts of felonious assault and one count of aggravated burglary. Shockey now timely appeals.
On September 8, 1997, the Clark County Grand Jury indicted Shockey on one count of attempted murder, two counts of felonious assault, and one count of aggravated burglary, all alleged to have occurred on August 27, 1997. On the same indictment, Shockey was charged with count five, discharge of a firearm at or into a habitation with a gun specification ("count five"). Count five was alleged to have occurred on July 5, 1997. Although the complaining witness in count five is not Earl Murphy, the complainant in the remaining four counts, the incidents all resulted from Shockey's jealousy that his ex-girlfriend, Pam Keaton, left him for Murphy.
At the jury trial on June 2-3, 1998, the evidence was as follows:
At 6:00 p.m. on August 26, 1997, Earl Murphy left work at Gordon Foods. He stopped off at several local bars where he drank a total of two and a half beers, and arrived at his apartment at the Adobe Motel at 8:30 p.m. Murphy had just recently rented the apartment with Pam Keaton, but she was not home at that time. Murphy ate a couple of sandwiches and then laid down to sleep.
Murphy testified that at approximately midnight that same evening, he awoke "seeing stars" to a hammer hitting his head. He jumped out of bed and found himself staring at Shockey who was holding the hammer and a knife. Murphy testified that he recognized Shockey because Shockey and Keaton had been a couple on and off during the six months preceding the attack. He stated they had met previously when Shockey came to pick up Keaton or to return articles of Keaton's clothing. During that meeting, Shockey had told Murphy to stay away from Keaton, warning him that Keaton was "bad."
At the apartment, Shockey continued to beat Murphy, yelling "Where's Pam, I'm gonna kill you." Murphy was unable to provide details of the fight, but at one point Murphy had fallen down onto the floor and Shockey beat him on the back of the head with the hammer.
The struggle eventually ended and Shockey left the apartment. Murphy stated that he found his way to the Motel's office and dialed 911. Patricia Ross, owner of the Adobe Motel, testified that at approximately 12:30 a.m., she was awakened by her dogs barking and commotion coming from the Motel's office. Ross discovered Murphy, covered with blood, speaking on the office telephone to a police dispatcher, stating that he had just been stabbed. Ross completed giving the dispatcher the information and walked Murphy outside to wait for the paramedics. Ross stated that she believed Murphy had been in shock because he repeated "I need help" as he stumbled around, looking as if he was about to pass out.
Murphy suffered a broken arm, a broken hand, stab wounds to his hand and his elbow, cracked ribs, and various lacerations on his back and head. Murphy had undergone two surgeries and spent eleven days in the hospital as a result of the altercation with Shockey.
The day after the attack Ross cleaned Murphy's apartment. She testified that she had not seen any bullet holes, nor were there signs of forced entry, as there was no damage to the doors or the windows in the apartment.
Shortly after the attack, Clark County Sheriff's Detective Debra Burchett was dispatched to the Adobe Motel for evidence collection. Det. Burchett evaluated the crime scene then spoke with Murphy at the hospital. At approximately 5:00 a.m., she went with Det. Vernon Whitt to Shockey's mother's home to speak with Shockey. Both detectives testified that when they asked to speak with Shockey about Murphy he quickly replied "Is he dead?"
Det. Burchett testified that Shockey agreed to be interviewed and he offered to show the detectives the location where he threw out the hammer and the gun from his car. The detectives listened as Shockey explained how Murphy had pulled the gun on him in the apartment, and how Shockey had taken it after Murphy shot at him. Deputies were immediately able to locate the hammer, but the gun was never found.
Shockey, his sister Karen Shockey, and his mother Patricia Ann Shockey testified for the defense. Karen Shockey stated that on the evening of August 26, 1997, she picked up her son from her mother's home and witnessed an argument in the driveway between Shockey and a man in a pick up truck. She testified that the person in the truck was Murphy, and that Shockey was yelling at Murphy for allegedly calling up Karen Shockey and Patricia Shockey and threatening them. Patricia Shockey testified that she also witnessed the argument that night. She also stated that Murphy had previously called her home and threatened to kill her, her daughter Karen and Shockey.
Shockey testified that he had met Murphy through Keaton, his ex-girlfriend. Shockey explained that Murphy had repeatedly threatened him, his mother and his sister because Shockey knew information about Murphy that he did not want revealed. Shockey testified that Murphy had pulled a gun on Shockey in the past, but the Clark County Sheriff's Office had taken no action.
On the evening of August 26, 1997, Shockey claimed he saw Murphy's pick up truck in his mother's driveway. When Shockey approached Murphy in the truck, Murphy had threatened to kill Shockey if anyone discovered the information about Murphy. Shockey stated that they argued for ten to fifteen minutes before Murphy pointed a gun at Shockey, then drove away while motioning for Shockey to follow him. Shockey claimed he followed Murphy to his apartment merely to "talk the situation out." Shockey and Murphy resumed arguing at Murphy's front door, and Shockey claims that Murphy stated "I'm going to get you now, now it's over with" as he pointed the gun at Shockey. Shockey testified that he kicked Murphy, the gun dropped and fell back behind the bed, and they fell into the apartment while struggling over the gun. Shockey stated that he grabbed the hammer on Murphy's floor and began hitting Murphy on the hands to knock the gun loose. During this scuffle, the gun went off and Shockey believed he had been shot in the hand. Shockey stated that he did not recall hitting Murphy in the head or in the back, as he was "fighting for [his] life." Shockey explained that eventually he had picked up the hammer and the gun and ran out of Murphy's apartment.
In contrast, Murphy testified that he did not see Shockey the night before the assault. Murphy stated that he had never called Shockey's home and threatened him. He also stated that he had never pulled a gun and pointed it at Shockey.
Shockey testified that on his way home he threw the gun and the hammer out of his car window. Shockey stated that he did this because he could later let Murphy know of their location, assuming Murphy would want them back. Although, at trial Shockey stated his car died on his way home and he pushed it behind a State Store and walked the rest of the way to his mother's house, he admitted on cross-examination that he "may" have told Det. Burchett that he was scared and "hid" his car behind the State Store.
Shockey denied making the statement "Is he dead?" Shockey denied telling Det. Burchett that he was in a rage that night. He also denied making a statement to the deputies that upon reaching the apartment, Murphy tried to run into his apartment, Shockey ran after him, knocked Murphy into the apartment, and that is when Murphy retrieved the gun from under his bed.
The State provided rebuttal evidence to these denials. Det. Whitt reaffirmed that Shockey did respond to his and Det. Burchett's questioning by stating "Is he dead?" Also, Det. Burchett produced an audiotape of Shockey's interview. On this tape, Shockey stated that he was in a rage that evening. The tape also included Shockey reiterating events that night, stating that he ran after Murphy at the apartment, knocked Murphy into the apartment, and that is when Murphy retrieved the gun.
At the close of the State's case in chief, the trial court granted the prosecutor's oral motion to dismiss count five for failure of proof on that charge. The prosecutor stated that the witnesses were present for the trial to testify, but he believed that it would not have been "appropriate to proceed" because the evidence was lacking. No objections were raised by defense counsel when given the opportunity to address the prosecutor's motion.
The jury returned a verdict of not guilty on count one of attempted murder, but guilty on the two counts of felonious assault and one count of aggravated burglary. On June 17, 1998, Shockey was sentenced to seven years for count two, felonious assault, and ordered to pay a fine of $7500. The other count of felonious assault was merged into count two, as both counts were found to be allied offenses of similar import and the State elected to proceed only on count two. Shockey was sentenced to an additional eight years for the aggravated burglary charge, to be served consecutively to the felonious assault charge. Shockey was ordered to pay a fine on that charge of $10,000. Shockey now timely appeals his conviction, asserting four assignments of error.
I.
 Appellant's right to a fair trial under the Ohio and United States Constitutions were violated by the States (sic) utilization of prejudicial joinder of an indicted charge in a manner calculated by the State to prejudice and mislead the trier of fact.
In his first assignment of error, Shockey alleges that count five should have been tried separately from the remaining four charges because it "planted the seeds of prejudice" against Shockey and cast him as a "person who exhibited violent disregard for others while using a firearm in the past." As a result, Shockey claims he was denied a fair trial and a different result could have reasonably occurred at trial if the charges had been severed.
Joinder of offenses and the avoidance of multiple trials "is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries." State v. Torres (1981), 66 Ohio St.2d 340,343. Offenses may be joined in a single indictment under Crim.R. 8(A):
 Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course or criminal conduct.
The trial court may sever the joined offenses if it appears that the defendant or the state is prejudiced by the joinder of offenses. Crim.R. 14. It is the defendant's burden to affirmatively show that his rights were prejudiced by the joinder, and that the trial court abused its discretion in refusing to separate the joined offenses for trial. Torres, supra, at 343. See, also, State v. Franklin (1991), 62 Ohio St.3d 118, 123.
"Joinder may be prejudicial when the multiple offenses are unrelated and the evidence as to each offense is very weak."State v. Mitchell (Jan. 6, 1998), Clark App. Nos. 97-CA-0048 and 97-CA-0049, unreported, citing State v. Brooks (1989), 44 Ohio St.3d 185. Key issues in determining if joinder is improper are the complexity of the evidence and whether the jurors are able to separate the proof required for the different offenses instead of combining the evidence and convicting upon all offenses. See,State v. Roberts (1980), 62 Ohio St.2d 170; State v. Lott (1990),51 Ohio St.3d 160, 163-164. However, if the evidence as to each offense is direct and uncomplicated, the jury is presumed to be capable of segregating the proof on the multiple offenses.Brooks, supra, at 193-194; Lott, supra, at 163-164.
Shockey argues that the events of July 1997 which gave rise to count five were separate and unrelated to the events of August 27, 1997, which gave rise to the remaining four charges. Shockey further argues that joinder was prejudicial because it showed Shockey's violent propensities, confused the jury, and discounted his self-defense theory. We disagree with both arguments. In reviewing the record, we cannot agree that it was error for the trial court to permit all five counts to be brought together on one indictment. As the prosecutor briefly mentioned in his opening statement, the incidents were related because the motives for both cases were intermingled and involved incidents resulting from Shockey's jealousy over the fact that his ex-girlfriend, Keaton, had left him and was again dating Murphy.
Furthermore, the joinder was not prejudicial. Evidence supporting the four charges which resulted from the incident on August 27, 1997 was separate, simple, and distinct from the evidence of count five, which occurred on July 5, 1997. In fact, no evidence at all was presented regarding count five before its dismissal. There is no evidence in the record that the jury was confused by the mere mention of an additional charge, that the jury found Shockey to have violent propensities or that it discounted his self-defense theory. Additionally, the jury acquitted Shockey on the attempted murder charge, demonstrating that it was able to separately consider the evidence presented in relation to each charge.
Additionally, as the State points out in its brief, at no point either before or during the trial did Shockey object to the joinder of count five to the other offenses. No objection was made at trial when the trial court gave Shockey the opportunity to respond to the prosecutor's motion to dismiss count five. As such, we must address this assignment of error under the plain error doctrine. Based on the foregoing reasons, we cannot say that "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
Shockey's first assignment of error is overruled.
 II. The cumulative effect of instances of prosecutorial misconduct during trial and in closing argument deprived the defendant a fair trial.
In his second assignment of error, Shockey claims that the prosecutor, by his misconduct, violated his right to a fair trial. Shockey asserts three instances of prosecutorial misconduct: (1) the State's presentation of count five at trial was prejudicial, (2) the State's presentation of Det. Burchett's rebuttal evidence improperly attacked Shockey's credibility, and (3) the State mischaracterized the law of aggravated burglary in its closing argument.
In considering claims of prosecutorial misconduct, we must examine whether the prosecutor's conduct at trial was improper, and if so, whether this conduct affected the defendant's substantial rights. Lott, supra, at 165. The analysis centers on the fairness of the trial, not the culpability of the prosecutor, in determining if the prosecutor's conduct is grounds for error.State v. Apanovitch (1987), 33 Ohio St.3d 19, 24; State v. Maurer
(1984), 15 Ohio St.3d 239. Error exists if it is clear beyond a reasonable doubt that the jury would not have found the accused guilty absent the prosecutor's comments. State v. Smith (1984),14 Ohio St.3d 13, 15; State v. Benge (1996), 75 Ohio St.3d 136,141. In reviewing the statements, the prosecutor's statements must be examined in the context of the record as a whole; harmless errors must be disregarded. United States v. Hastings (1983),461 U.S. 499, 509. Additionally, the state is permitted wide latitude in commenting on and drawing inferences from the evidence. State v. Stephens (1970), 24 Ohio St.2d 76, 82.
To begin, we note that Shockey failed to object at trial to the remarks about which he now complains. As a result, those alleged errors are not properly preserved for appellate review, and this court cannot sustain Shockey's argument concerning those remarks unless the error rises to the level of plain error. Statev. Wickline (1990), 50 Ohio St.3d 114; Long, supra, at 82.
Shockey's first claim of prosecutorial misconduct is an assertion of prejudicial misjoinder of count five to the rest of the indictment. Because the State referred to the charge in its opening statement, and at the close of the State's case in chief when it moved to dismiss count five, Shockey asserts that this "tainted" and adversely affected his trial on the events which occurred on August 27, 1997, claiming that this conduct "undeniably rendered the trial into a mockery of justice," and thus his convictions should be reversed. We do not agree. As we stated before in addressing Shockey's first assignment of error, we do not find error in the joinder of count five with the other four counts. The prosecutor's pursuit of the charge at trial, then the subsequent motion to dismiss does not, in our view, constitute prosecutorial misconduct, and does not rise to the level of plain error. Had the prosecutor, after evaluating the evidence available to him at trial, decided to go forward on a charge that he knew was going to result in a "failure of proof," that conduct would be cause for concern. As such, the mere mention of the charge in the prosecutor's opening statement and later dismissal of the charge was not misconduct, as the statements were not improper and did not affect Shockey's substantial rights. Furthermore, we do not find plain error in this conduct.
In his second allegation of prosecutorial misconduct, Shockey argues that the rebuttal testimony of Det. Burchett and her reference to the non-discovery of a bullet hole in Murphy's apartment was "a linch pin for posturing the Appellant to prove a negative." We do not agree, as this evidence was presented in direct rebuttal of Shockey's testimony. "The admission or exclusion of rebuttal evidence rests within the sound discretion of the trial court." State v. Osborne (May 9, 1997), Huron App. No. H-96-013, unreported, citing Evid.R. 611(A) and State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus.
Upon direct examination, Shockey claimed that Murphy had pulled a gun on him first in his mother's driveway, then again at the apartment. Shockey testified that a struggle over the gun occurred between Murphy and him at the apartment, resulting in the gun being fired at him by Murphy. Believing he was shot, Shockey testified that he was "fighting for [his] life" and hit Murphy with the hammer. The following testimony was elicited from Shockey on cross-examination:
 Q. Why didn't they find this gun that you say you were threatened with?
 A. I have no idea. They should have been able to find it. They told me they was gonna go back out with a metal detector and look for it.
 Q. If the gun went off in the house, why didn't they find a bullet hole?
A. I have no idea. Did they look?
 Q. You would agree there would probably be a bullet hole if the gun went off in the house. Would you agree with that?
 A. I know for a fact that there's a bullet hole somewhere in that motel room.
(Tr. 165) On rebuttal, the prosecution called Det. Burchett to impeach Shockey's self-defense theory. Det. Burchett testified on the morning of trial, she went out to the apartment to look for bullet holes. No bullet holes were found.
After reviewing the record in this case, we cannot say that the substantial rights of Shockey were prejudicially affected by the rebuttal testimony. We cannot agree with Shockey's claim that this statement placed the burden on Shockey to prove that there was a bullet hole. We find the court properly admitted this evidence for the limited purpose of rebutting Shockey's testimony on direct and cross examination.
Even if we agreed with Shockey's argument that the evidence should not have been allowed, it would not have affected the outcome, because the plain error standard still governs this analysis. We cannot find that but for the reference to the lack of discovery of a bullet hole the outcome at trial would have been different. There was other credible evidence from which the jury could have concluded Shockey's guilt, and there is no indication in the record that the jury chose to take Det. Burchett's testimony as more than rebuttal evidence.
Finally, Shockey contends that during the State's closing argument, the prosecutor attempted to persuade the jury that the evidence in this case did meet the necessary elements of aggravated burglary.
Generally, prosecutors are entitled to a significant degree of latitude during closing arguments. State v. Brown (1988),38 Ohio St.3d 305; Maurer, supra, at 267; State v. Liberatore (1982),69 Ohio St.2d 583, 589. The prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." Lott, supra, at 165, quoting Stephens, supra, at 82. It is not improper for the prosecutor to comment fairly on the credibility of witnesses based on their testimony at trial, and to argue that certain evidence tends to make a witness more or less credible. State v. Mundy (1994), 99 Ohio App.3d 275, 304; Statev. Carpenter (1996), 116 Ohio App.3d 615. However, the prosecutor may not "express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused."Smith, supra, at 14. The closing argument must be viewed in its entirety to determine whether the prosecutor's remarks were prejudicial. State v. Moritz (1989), 63 Ohio St.2d 150, 157.
Shockey alleges that the prosecutor "misled the jury" by stating that the elements of aggravated burglary were met "under any version of the facts." As the State correctly points out in its brief, this is not the case, and Shockey's argument mischaracterizes the prosecutor's statements. During his closing, the prosecutor evaluated all of the different versions of the events, pointing out to the jury all of the contradictions in the various versions of Shockey's stories. After explaining to the jury that it is their job to evaluate the credibility of the witnesses, the prosecutor stated:
 I would submit to you that as far as the charges are concerned under either version offered — the version — I guess let me back up. I would submit this. That the version that Mr. Shockey gave you here in this courtroom is totally incredible. Totally incredible considering the statement he gave to the Clark County Sheriff's Office and considering the other evidence that we have before you in this case.
 So that leaves us with the Defendant's third version he gave to the cops and Mr. Murphy's version he gave you here in the courtroom; and I would submit to you that under either of these versions, this man here is guilty of these crimes. Whether Mr. Murphy was asleep — let's make it simple. Whether Mr. Murphy was asleep or whether it happened by him bum rushing him and knocking him into the room doesn't matter. Doesn't matter as far as you're concerned because you can't listen to all this evidence that you've heard in this case and conclude anything other than the fact that this man inflicted all those injuries upon Earl Murphy and that he did so with a hammer and a knife and that the force he used to get into his house was either the force it took to open a door which was closed when Mr. Murphy was asleep or the force that he used to knock Mr. Murphy over and bowl him into the room so that they could go at it and fight. Doesn't make any difference. It's only if you were to believe the unbelievable testimony of the Defendant in this case that he gave you from the witness chair that you would find different. And I submit to you that if you approach this case with reason and common sense, you won't believe that.
(Tr. 208-209) When viewing the paragraph at issue in the context of the State's entire closing argument, the prosecutor's comments were fair and did not affect Shockey's substantial rights. In our judgment, it was well within the bounds of a proper closing argument for the prosecutor to argue that based on the different versions of Shockey's stories, he was not the most credible witness at trial. We find that they constitute fair comment on what the evidence did show and the inferences that could be drawn therefrom. These remarks were not objectionable or improper, nor did they affect Shockey's substantial rights.
The second assignment of error is overruled.
 III. Appellant was denied of his right to effective assistance of counsel in contravention of the Sixth
and Fourteenth Amendments to the Untied (sic) States Constitution, and Article One, Section Ten of the Ohio Constitution.
In his third assignment of error, Shockey asserts the following five claims that his trial counsel fell below the standard level of effective assistance of counsel: (1) he failed to move for a Crim.R. 14 motion to sever due to prejudicial joinder, (2) he failed to object to the State's posturing of the case related to count five, (3) he failed to move for a mistrial when the State dismissed count five, (4) he permitted improper rebuttal testimony of Det. Burchett, and (5) he failed to object in the State's closing to erroneous statements of law.
To show ineffective assistance of counsel, a defendant must prove that his trial attorney's representation fell below an objective standard of reasonableness and that the defendant was prejudiced by the deficient performance. Strickland v. Washington
(1984), 466 U.S. 668, 687-688; State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus. In order to show prejudice, the defendant must prove that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.
In regards to his first, second and third claims, we have already found that the prosecutor's actions of joining count five to the remaining four counts of the indictment and the act of referring to and then subsequently dismissing count five were not improper, supra. For these reasons, we also reject the argument that counsel acted deficiently in not moving for a Crim.R. 14 motion, in not moving for a mistrial, and in not objecting to the comments. Similarly, we also found that the rebuttal testimony of Det. Burchett was not improper, and that the State's closing did not erroneously state the law regarding aggravated burglary,supra. Thus, for the same reasons, we reject Shockey's remaining two claims that counsel acted deficiently in permitting the rebuttal testimony and in failing to object in the State's closing argument regarding the alleged erroneous statements of law.
The third assignment of error is overruled.
 IV. The Appellant was denied a fair trial due to the evidence being insufficient to support his conviction.
In his final assignment of error, Shockey asserts that his convictions were based upon insufficient evidence. Sufficiency of the evidence is a question of law which tests the adequacy of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In considering a claim of sufficiency of the evidence, a reviewing court:
 [E]xamine[s] the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Additionally, because the trier of fact is in a better position to observe the witnesses' demeanor, gestures and voice inflection, the weight of the evidence and credibility issues are best resolved by the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph 1 of the syllabus.
After reviewing the record, we conclude that there was sufficient evidence upon which to conclude that all the elements of felonious assault under R.C. § 2903.11(A)(1) and (2) and all of the elements of aggravated burglary had been proven beyond a reasonable doubt. The felonious assault statute, R.C. 2903.11(A) provides
No person shall knowingly:
 (1) Cause serious physical harm to another or to another's unborn.
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
The aggravated burglary statute, R.C. § 2911.11(A) provides in relevant part:
 No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another.
The record reflects that the State presented ample evidence from which the jury could have concluded beyond a reasonable doubt that Shockey committed the offenses of felonious assault and aggravated burglary. The State provided evidence of felonious assault under both R.C. § 2903.11(A)(1) and (2) that Shockey did knowingly cause serious physical harm to Murphy by hitting him repeatedly in the head, back and shoulder area with a hammer and breaking his arm, hand, and fracturing his skull, and that he did knowingly cause physical harm to Murphy by means of a knife, a deadly weapon, when he stabbed him in the back and arms. Furthermore, evidence was presented that Shockey trespassed into Murphy's apartment while Murphy was asleep, with purpose to commit a criminal offense of assault, and that Shockey did inflict physical harm onto Murphy, from which the jury could have concluded that the State had established the elements of aggravated burglary beyond a reasonable doubt.
Under this assignment of error, Shockey also claims that the verdict was based on insufficient evidence because the State focused its efforts on "posturing" Shockey as an "absurd liar" by claiming the non-existence of the gun. This argument has already been addressed and overruled under assignments of error two and three, supra. As we concluded that the State's rebuttal evidence of Det. Burchett was not improper, that, along with testimony from Patricia Ross who stated that she did not see a bullet hole, simply served to corroborate Murphy's recollection of events and his testimony at trial, and served to impeach Shockey's credibility. A sufficiency of the evidence argument applies solely to the quantum of proof adduced by the state as to the elements of the offenses. The jury in this case was free to accept or reject all or any part of the testimony of any of the witnesses. It was also free to assess the credibility of those witnesses. The jury was presented with sufficient evidence from which it could have disbelieved Shockey's claim that he acted in self-defense. As such, we find in the record ample evidence to support the jury's verdict that Shockey was guilty of the elements of felonious assault and aggravated burglary beyond a reasonable doubt.
Shockey's fourth assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P. J. and FAIN, J., concur.
Copies mailed to:
David E. Smith
Ronald R. Boblitt
Hon. Richard O'Neill