JOURNAL ENTRY AND OPINION
Alfonso McDonald claims error in the jury trial and judgment of conviction on two counts of murder with firearm specifications; one count of attempted murder with a firearm specification; three counts of aggravated robbery with firearm specifications; and one count of having a weapon while under a disability. He argues that Judge Timothy McCormick should have given the requested jury instruction on the lesser charge of voluntary manslaughter; that his aggravated robbery convictions were not supported by the evidence; that prosecutorial misconduct deprived him of a fair trial; and that his attorney was ineffective because he did not insure that evidence of prior bad acts did not go before the jury.
We agree in part. The judge should have given the requested instruction on voluntary manslaughter, so we reverse his murder convictions and remand for a new trial on those charges. We affirm his robbery conviction and overrule the remaining assignments of error.
On October 4, 1994, David Barnes, who grew up next door to McDonald, left his home in Warrensville Heights, Ohio around 9:00 p.m. Leon Webb, driving a white Delta 88, and McDonald drove up to Barnes, who asked for a ride to East 55th Street in Cleveland. The three men drove to East Cleveland because McDonald had indicated he wanted to find some people he claimed had robbed him. At McDonald's direction, Webb pulled into a parking lot next to an apartment at 1517 Eddington Avenue. According to Barnes, he and McDonald exited the car and, as Barnes closed the rear passenger door, he "noticed" that McDonald had a black, .45 automatic hand gun. Barnes later admitted he had taken the gun, which was owned by his father, from his home and that McDonald got the gun from him.
Earlier that same night, Marcus Johnson, then fifteen years old, met eighteen-year-old Eddie Phoesom and seventeen-year-old Ronnie Brown, Recco Dennis, and Hakim Crymes. The four showed Johnson some fake crack cocaine ("dummies") they had made from mothballs, which they had planned to sell as "crack" as they walked down Superior Hill. Dennis admitted that he carried a .38 revolver during this time. According to Crymes, Dennis later gave Brown the gun.
When the group arrived at a convenience store at East 125th and Arlington Avenue, Dennis used the revolver to car-jack a 1984 blue Chevrolet Celebrity. The five jumped into the car, and Dennis drove toward Eddy Road and then to Doan Avenue, where they purchased some marijuana. Phoesom was in the front seat, and Johnson sat in the back between Brown, to his left, and Crymes, to his right.
After purchasing marijuana, they drove to 1517 Eddington Avenue to see Phoesom's friend, Rayshawn Willis, to join them in smoking the marijuana, but he was not available. When Phoesom returned to the car, he sat with the passenger door open, rolling a "blunt," a marijuana cigar, for each of them. Johnson testified McDonald and a heavy-set, "light-skinned guy" approached them in the parking lot, and McDonald asked whether they had more marijuana. Phoesom, still rolling the blunt, responded, "[N]aw, we about to smoke this." McDonald pointed a gun at them, saying "[A]ll y'all get out." He reached across Phoesom and grabbed the car keys. Phoesom and Brown stood on the passenger side of the car with McDonald. Johnson heard either McDonald or the light-skinned man say, "[T]hat's them niggas that jumped me," or something like that.
According to Johnson, the light-skinned man searched Crymes, took his pager, and then tried to search Johnson. When Crymes told him to leave Johnson alone, the man took a swing at Crymes; Johnson ran, and Crymes followed. Johnson then heard four shots.
According to Dennis, Phoesom got the gun from Brown and fired at McDonald. McDonald then "folded up" and fired his gun three times. McDonald and the light-skinned man then ran to a light-colored Oldsmobile, entered, and drove away.
Barnes claimed that after he exited the rear seat, he walked with McDonald only six to eight feet toward an occupied car parked about thirty feet away. He testified McDonald allegedly told him he would "be right back." Although Barnes did not hear any conversation between McDonald and the occupants of the car, he noticed someone in the front seat of the Celebrity pull a gun. Barnes saw McDonald pull a gun, and the sound of three gun shots followed. McDonald jumped in the back seat of the Oldsmobile, bleeding, and said, "I didn't mean to go like that. They shot me and I shot back." Barnes admitted that he did not see who fired the first shot.
At Barnes' suggestion, Webb dropped Barnes off near his home and took McDonald to Brentwood Hospital on Warrensville Center Road. McDonald was treated for his gunshot wound under the name of "Chris Smith," claiming to have been shot at Lee Road and Harvard Avenue in Cleveland. Police officers recovered a blunt from hospital personnel who had taken it from "Smith."
Barnes' father, Charles, testified that his son told him what happened and gave him the gun. The day after the shooting, he took the gun to the Calvary Cemetery and buried it out of fear that his son might be charged with a crime.
Both Brown and Phoesom were hit by bullets from the same gun. Brown died from a single gunshot wound to his left chest. The bullet entered the front left chest, traveled through both lungs and his heart, resting in his right back. Efforts to save Phoesom failed. The bullet entered his lower left abdomen, through the small intestine, and came to rest in the upper portion of the left buttock. Both died as a result of internal hemorrhaging.
The case remained unsolved until October 1997, when the East Cleveland police interviewed a suspected drug dealer who implicated McDonald, Barnes and Webb. Dennis, Crymes and Johnson all identified McDonald as being the shooter in the killings. On March 26, 1998, McDonald was indicted for two counts of murder, R.C.2903.02, with firearm specifications on Counts I and II; attempted murder, R.C. 2903.02 and 2923.02, with a firearm specification on Count III; aggravated robbery, R.C. 2911.01 with firearm specifications on Counts IV, V, and VI; and having a weapon while under a disability, R.C. 2923.12, on Count VII. These crimes all predated S.B. 2.
A jury trial commenced October 1, 1998. At the conclusion of the evidence, the judge denied McDonald's Crim.R. 29 motion. The jury found McDonald guilty of the murders of Phoesom and Brown with the firearm specifications; not guilty of the attempted murder of Crymes; guilty of aggravated robbery of Phoesom, Crymes, and Hakim; and guilty of having a weapon under a disability.
That same day, the judge sentenced McDonald to consecutive terms of fifteen years to life and one consecutive three-year term for the firearm specifications on Counts I and II; concurrent terms of ten to twenty-five years on Counts IV, through VI and ordered the firearm specifications in these counts merged with those of Counts I and II; and imposed a consecutive term of eighteen months on count VII.
McDonald asserts four assignments of error, the first stating:
 I. THE TRIAL COURT ERRED AND DENIED ALFONSO McDONALD HIS CONSTITUTIONAL RIGHT TO A TRIAL BEFORE AN INFORMED JURY WHEN IT REFUSED TO GIVE HIS REQUESTED JURY INSTRUCTION ON A LESSER OFFENSE.
McDonald argues that the judge's failure to instruct the jury on the lesser offense of voluntary manslaughter deprived him of his constitutional right to a fair trial before an informed jury. He claims that the evidence showed sufficient provocation and, therefore, the judge should have given the instruction. The state contends, however, that McDonald was the aggressor and that the evidence was not sufficient to warrant such an instruction.
 Voluntary manslaughter is an inferior degree of murder, for "its elements are *** contained within the indicted offense, except for one or more additional mitigating elements ***." State v. Tyler (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576, 592, quoting State v. Deem (1988). 40 Ohio St.3d 205, 209, 533 N.E.2d 294, 298. See [State v.] Rhodes, supra, 63 Ohio St.3d [613] at 617, 590 N.E.2d [261] at 263. Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought. Tyler, supra, 50 Ohio St.3d at 37, 553 N.E.2d at 592.
 Thus, a defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter. Tyler, supra, at 37, 553 N.E.2d at 592; Deem, supra, 40 Ohio St.3d at 211, 533 N.E.2d at 299-300; State v. Thomas (1988), 40 Ohio St.3d 213, 216, 533 N.E.2d 286, 289.
 When the evidence presented at trial going to a lesser included offense (or inferior-degree offense) meets this test, the trial judge must instruct the jury on the lesser (or inferior-degree) offense. State v. Loudermill
(1965), 2 Ohio St.2d 79, 31 O.O.2d 60, 206 N.E.2d 198, syllabus. On the other hand, when the evidence presented at trial does not meet this test, a charge on the lesser included (or inferior-degree) offense is not required. State v. Kidder (1987), 32 Ohio St.3d 279, 282-283, 513 N.E.2d 311, 315-316. [State v. Shane (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272.]
Before a judge gives "a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction."Shane, 63 Ohio St.3d 630 at paragraph one of the syllabus.
Former R.C. 2903.03 (A) defined "voluntary manslaughter":
 No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another.
As with the current definition of "knowingly," former R.C.2901.22 (B) provided that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage. State v. Mack (1998), 82 Ohio St.3d 198,201, 694 N.E.2d 1328.
To warrant an instruction on voluntary manslaughter, the judge must determine whether the evidence passes two tests. Shane,63 Ohio St.3d at 634-635. The first test is an objective one: whether the provocation is sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Id. at 635,590 N.E.2d at 276-277. If the evidence meets this requirement, the judge applies a subjective test: whether the defendant showed that, in this particular case, he was actually under the influence of sudden passion or in a sudden fit of rage. Id. at 634.
In the present case, the record provides some evidence of reasonably sufficient provocation to support such an instruction. Having been shot first, McDonald's immediate response, to pull the trigger of his gun and shoot both Phoesom and Brown, and his comment to Barnes ("I didn't mean to go like that. They shot me and I shot back."), could be evidence that he was under the influence of sudden passion or in a sudden fit of rage. This having passed both the objective and subjective tests set forth inShane, the judge incorrectly denied McDonald's request for a jury instruction on voluntary manslaughter. McDonald's first assignment of error is sustained.
 II. ALFONSO McDONALD HAS BEEN DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW, BY HIS CONVICTIONS FOR AGGRAVATED ROBBERY, WHICH WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.
In his second assignment of error, McDonald claims that the evidence supports, at most, a conviction on one count of aggravated robbery against Hakim Crymes. No one testified that McDonald took anything from anyone else present at the scene. Therefore, the aggravated robbery charges contained in counts four and five must be dismissed. The state contends that it presented sufficient proof to show that McDonald intended to rob Phoesom and Brown; McDonald was only stopped short of robbing them because Phoesom shot him.
When a reviewing court addresses an assignment of error regarding the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; accord Jackson v. Virginia, 443 U.S. 307, 319,99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546. As the question of sufficiency of the evidence presents a question of law, it does not allow the reviewing court to weigh the evidence. Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721, citing Jackson, 443 U.S. at 319. The reviewing court will not disturb a verdict unless it determines that reasonable minds could not have reached the conclusion reached by the trier of fact.Jenks, 61 Ohio St.3d at 273, 574 N.E.2d at 503.
Former R.C. 2911.01 (A) provided that:
 [N]o person, in attempting or committing a theft offense or in fleeing immediately after such attempt or offense shall do either of the following: (1) have a deadly weapon or dangerous ordnance *** on or about his person or under his control; and (2) inflict, or attempt to inflict serious physical harm on another.
Like the current theft statute, former R.C. 2913.02 (A) proscribes a person, with purpose to deprive the owner of property or services, from knowingly obtaining or exerting control over either the property or services without the consent of the owner or person authorized to give consent, or by other means such as by threat or deception. Section 2913.02 is a "theft offense" as described by § 2911.01 (A), R.C. 2913.01 (K)(1).
McDonald challenges the sufficiency of the evidence going only to the element of "theft offense." Contrary to the arguments asserted by McDonald, and the state, the evidence presented by the state was sufficient to support the verdict of guilty for the aggravated robbery of both Phoesom and Brown. The evidence showed that Johnson, Phoesom, Brown, Crymes, and Dennis purchased marijuana for their mutual consumption. Phoesom was in the process of rolling his second blunt, the first resting on the dashboard, when McDonald asked Phoesom for marijuana. McDonald reached in, took the keys, and, pulling the gun, told them to get out of the car. The first blunt did not show up in the police inventory taken of the contents of the Celebrity after the shootings. However, a blunt was taken from "Chris Smith," i.e., McDonald, when he went for treatment at Brentwood Hospital immediately following the shootings. Based upon this evidence, we conclude that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of aggravated robbery of Phoesom and Brown proven beyond a reasonable doubt. McDonald's second assignment of error is overruled.
 III. REPEATED PROSECUTORIAL MISCONDUCT DURING ITS CLOSING ARGUMENT DEPRIVED ALFONSO McDONALD OF A FAIR TRIAL.
In his third assignment of error, McDonald argues that the prosecutor improperly argued during closing arguments that Barnes gave the gun to McDonald, contrary to the testimony at trial. The state contends that the statement was isolated and cannot be construed as prejudicial, given the amount of evidence that supported the verdict.
The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether the rights of the accused were materially prejudiced. State v. Smith (1984),14 Ohio St.3d 13, 14, 470 N.E.2d 883, 885. "[I]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott
(1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, quoting State v.Stephens (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773, 777.
Contrary to McDonald's argument and the assumption made by the state, the prosecutor's assertion during closing argument that Barnes gave the gun to McDonald is a reasonable inference drawn from Barnes' testimony. Barnes admitted that the gun belonged to his father, that he brought the gun from the house into the car, and that McDonald got the gun from him. Because the prosecutor's statement was not improper, McDonald's third assignment of error is overruled.
 IV. ALFONSO McDONALD WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHEN TRIAL COUNSEL DID NOT INSURE EVIDENCE OF PRIOR BAD ACTS DID NOT GO BEFORE THE JURY.
In his fourth assignment of error, McDonald contends that his attorney should have asked the court to sever count seven, having a weapon while under a disability, from the trial on the other charges or tried the count to the bench. He argues that instead of stipulating that he had a prior conviction, his attorney should have stipulated that he was under a disability as defined by law. According to McDonald, the information about the prior conviction tainted the entire jury verdict. The state, however, counters that this did not rise to the level of constitutionally ineffective assistance of counsel as it amounts to a mere tactical decision as to how to proceed at trial.
This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.State v. Tollivar (July 31, 1997), Cuyahoga App. No. 71349, unreported; see State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258, 111 L.Ed.2d 830. Under Strickland, a reviewing court will not deem the attorney's performance ineffective unless the defendant can show that the attorney's performance fell below an objective standard of reasonable representation and that prejudice arose from the attorney's deficient performance. Bradley, 42 Ohio St.3d 136,538 N.E.2d 373 at paragraph one of the syllabus. Judicial scrutiny of a defense attorney's performance must be highly deferential. State v. Sallie (1998), 81 Ohio St.3d 673, 674,693 N.E.2d 267; State v. Williams (1991), 74 Ohio App.3d 686, 695,600 N.E.2d 298, 304, dismissed, motion overruled (1991) 62 Ohio St.3d 1463,580 N.E.2d 784. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ***." Bradley,42 Ohio St.3d at 142, 538 N.E.2d at 379-380, quoting Strickland, 466 U.S. at 689. To show prejudice resulting from an attorney's performance, a defendant must prove that, but for the attorney's errors, a reasonable probability exists that the result of the proceedings would have been different. Bradley, supra at paragraph three of the syllabus; State v. Girts (1997), 121 Ohio App.3d 539, 559,700 N.E.2d 395, discretionary appeal not allowed (1997), 80 Ohio St.3d 1424,685 N.E.2d 237.
We cannot conclude that the performance at trial of McDonald's attorney fell below an objective standard of reasonable representation. The decision to try the disability charge to the jury, in and of itself, cannot be construed as anything more than a tactical one. Moreover, even if we concluded that such a decision fell below the reasonable representation standard, McDonald has not shown how the mere reference to his previous conviction for drug abuse, R.C. 2925.11, in the charge to the jury as it related to the disability charge, somehow tainted the entirety of the proceedings to the extent that a reasonable probability exists that the result of the proceedings would have been different. Because McDonald has failed to show that his attorney's performance fell below an objective standard of reasonable representation, his fourth assignment of error is overruled.
Based upon the foregoing, we reverse McDonald's murder conviction and remand for a new trial. However, we affirm his robbery convictions, and overrule the remaining assignments of error.
Affirmed in part, reversed in part and remanded.
It is ordered that each party bear his own costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. We reverse appellant's murder convictions and remand for a new trial on those charges. Appellant's robbery convictions having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________ JUDGE, ANNE L. KILBANE
 TIMOTHY E. McMONAGLE, P.J., AND PATRICIA ANN BLACKMON, J., CONCUR.