The State of Ohio, Appellee, *v.* Stephens, Appellant.

[Cite as State v. Stephens (1970), 24 Ohio St. 2d 76.]

(No. 69-622—Decided November 10, 1970.)

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. John J. Mayar*, for appellee.

*Mr. James R. Willis*, for appellant.

JOHNSON, J. The principal error assigned arises out of statements made by the prosecutor in his final argument to the jury, which statements made direct reference to defendant's silence at the time of his arrest. This was done for the apparent purpose of implying defendant's guilty knowledge that the prescription was forged. Such statements appear in the bill of exceptions, as follows:

"Mr. Mayar [prosecutor]: * * * Why did he not tell the police at the shopping center, 'Hey—'

"Mr. Willis [defense counsel]: Objection to that type of argument, your Honor.

"The Court: Overruled.

"Mr. Mayar: 'Hey, look, this prescription that you found, this is a good one. This is a good prescription. I am getting it for a buddy.' Why didn't he tell the police?

"You see what goes into determining guilty knowledge. Do you see what goes into intent? Do you see how you arrive at whether or not the fellow knew?"

At the time of the objection to the statement complained of the jury was not instructed to disregard it, nor was the prosecutor instructed to discontinue this line of argument. Instead, after the objection had been overruled, the prosecutor continued with the same line of argument that defendant's silence constituted guilty knowledge.

At the conclusion of the general charge, defense counsel moved for a mistrial and his motion was denied.

The record does not disclose any questioning of the

defendant relative to any statements made at the time of arrest. Defendant admitted uttering the prescription, claiming that he had done so at the behest of a friend who gave him the prescription and the money for payment.

Shortly after the second druggist refused to honor the prescription defendant was arrested. He made no statement after being taken into custody.

Defendant urges that the actions of the prosecutor in final argument to the jury are a violation of his constitutional right against self-incrimination, in that he had an absolute right to remain silent and that the prosecutor's reference to that silence, with its implication of guilt, was prejudicially erroneous.

In *Griffin* v. *California* (1965), 380 U. S. 609, the Supreme Court of the United States held that comment to the jury by a prosecutor in a state criminal trial, upon defendant's failure to testify, violates the self-incrimination clause of the Fifth Amendment of the United States Constitution.

Thereafter in *Miranda* v. *Arizona* (1966), 384 U. S. 436, that court held, in paragraph 1 (b) of the syllabus:

"The privilege against self-incrimination, which has had a long and expansive historical development, is the essential mainstay of our adversary system and guarantees to the individual the right to remain silent unless he chooses to speak in the unfettered exercise of his own will, *during* a period of custodial interrogation *as well as* in the courts *or during* the course of other official investigations." (Emphasis added.)

This court held, in *State* v. *Minamyer* (1967), 12 Ohio St. 2d 67, that in a criminal prosecution a prosecuting attorney could not "testify as to or comment upon the refusal of the accused to testify before the grand jury."

Obviously such action has a prejudicial effect, and to allow such comment would completely circumvent an accused's privilege against self-incrimination. As was said in *Minamyer*: "It is the refusal to testify rather than the subject matter of the refusal which would impress the minds of the jurors."

We reached a similar conclusion in *State* v. *Davis* (1967), 10 Ohio St. 2d 136, as to comments of a prosecutor relative to the defendant's refusal to appear and testify at a preliminary hearing.

Here, we are concerned with another facet of the problem. The question might well be put: When a defendant testifies in his own behalf are the protections against self-incrimination waived? May the prosecutor then comment upon defendant's silence during any stage of the accusatorial process?

In the recent case of *United States, ex rel. Smith,* v. *Brierly* (1967), 384 F. 2d 992, a habeas corpus proceeding following defendant's conviction for felony murder, it was shown that Smith testified in his defense at trial. It was held that, during an in-custody interrogation, a shaking of the head and pursing of the lips by the defendant, in answer to a question directed to several accomplices, could not be testified to as a "tacit admission" by an interrogating officer. The court said:

"We agree with the District Court that the use of such an episode as an admission by the accused of a fact vital to the proof of a capital offense cannot be squared with the requirement of the Fourteenth Amendment that criminal procedure be fundamentally fair. We have pointed out that the episode occurred while the accused was in custody and under police interrogation on a capital charge. If his choice was to remain silent, he could not constitutionally be forced to speak."

See, also, *Galasso* v. *State* (Fla. App. 1968), 207 So. 2d 45.

In *Vitali* v. *United States* (1967), 383 F. 2d 121, the United States Circuit Court of Appeals of the First Circuit held that a defendant who during interrogation speaks freely takes a calculated risk. In its opinion, at page 123, the court said:

"* * * A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits, and not on some artificial standard that only the part that helps him can be later referred to. This was

not a case where the government commented upon failure to take the stand, *or on a prior exercise of rights.* The government asked the jury to measure what the defendant said when he had no rights because he had voluntarily waived them." (Emphasis added.)

In *Gillison* v. *United States* (1968), 399 F. 2d 586, the prosecutor, in cross-examination of the defendant, asked the defendant why he did not make a statement to the police at the time he was apprehended. Upon defendant's reply that he did not want to make any statement without the presence of an attorney, the prosecutor then remarked: "And that's the action of an innocent man who went looking for a job." The court held, citing *Griffin* v. *California, supra,* that "the prosecution may not therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

In *United States* v. *Brinson* (1969), 411 F. 2d 1057, defendant appealed a conviction for transporting fraudulently obtained money in interstate commerce. The United States Attorney was permitted to inquire on cross-examination, in the presence of the jury, whether defendant had previously discussed his trial-asserted defense with any prosecuting agent or law enforcement officer. In finding that such interrogation was contrary to defendant's Fifth Amendment privilege, the court held that, even though defendant did not object to such cross-examination and failed to except to the closing arguments of the prosecution, it would consider the errors assigned if they were plain errors affecting a substantial constitutional right.

In *United States* v. *Nolan* (1969), 416 F. 2d 588, defendant was convicted for unlawfully transporting a stolen vehicle in interstate commerce. Until Nolan testified he had made no exculpatory statement to the federal or state officers or agents. The Tenth Circuit Court of Appeals held that:

"United States' counsel's statements in closing argument that failure of defendant to make his exculpatory statements to officers when they arrested him for trans-

porting in interstate commerce a stolen motor vehicle cast doubt on truth of the statements was error so plain, fundamental and serious as to require reversal of conviction despite failure of defendant to make timely objection thereto.''

In its conclusion the court stated:

''We see no difference in principle in the exercise by the defendant of his constitutional *right not to testify* and his constitutional *right to remain silent and refrain from making either an inculpatory or exculpatory statement* to the officers when taken into custody for a federal offense. In *either* case, the comment would greatly impair such privilege and penalize the exercise thereof. Apposite is the language of the Supreme Court in *Griffin* v. *California,* 380 U. S. 609, at page 614, 85 S. Ct. 1229, at page 1233: 'It is a penalty imposed * * * for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.' '' (Emphasis added.)

We recognize, as is readily apparent from the above citations, that the right to remain silent does not require that the accused's silence must be total from its original invocation until the jury's final verdict.

In the first detention of a suspect it is not uncommon to react by refusing to discuss the charges until a lawyer can be retained. Desire for friendly counsel and advice can be a major motivation at that time in the mind of one completely innocent of the charges, as well as one who subsequently may admit his guilt.

His privilege at that time is silence. Whether, upon later reflection, or upon advice of counsel, he elects to cooperate with the investigating authorities, he should not thereafter be penalized for his original refusal.

The right of silence, while singular in the constitutional grant, may be plural in application. That right, once invoked by an accused while under accusation, is not waived by reason of defendant testifying at the trial.

Prosecution references to that silence, or any inferences drawn therefrom, are not permissible unless the rec-

ord clearly demonstrates by the action and testimony of the defendant that he has waived the privilege previously asserted.

In the instant case, neither the prosecution nor the defense directed any question to the defendant relative to his action or conduct while in the custody of the police officers at the time of his arrest. No testimony was elicited from any of the arresting officers indicating that any in-custody statement had been made.

In no way was defendant's previously asserted silence waived. We conclude, therefore, that the comments of the prosecutor were of such a prejudicial nature as to require this conviction be reversed and this cause remanded for a new trial.

Inasmuch as this case will be retried we will comment briefly upon the other error assigned by appellant.

In his final argument, the prosecutor stated that, in his opinion, the defendant was a liar and was guilty as charged. Subsequently, after considerable colloquy between the prosecutor, the court and defense counsel in the presence of the jury, additional personal opinions of untruthfulness and guilt were expressed by the prosecutor, grounded on what the evidence had shown.

We deem personal opinions of guilt by the prosecutor to be an impropriety to be avoided. But we do not thereby conclude that such statements are prejudicially erroneous per se.

In the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.

In *State* v. *Thayer* (1931), 124 Ohio St. 1, at page 6, this court quoted, with approval, the following general rule stated in 16 Corpus Juris 908, Section 2257:

"Although there are some decisions apparently to the contrary, it is generally held to be error for the prosecuting attorney in his argument to the jury to declare his individual opinion or belief that defendant is guilty, in such a manner that the jury may understand such opin-

ion or belief to be based upon something which the prosecutor knows outside the evidence.''

The practice of stating personal opinions of guilt during summation by the prosecution is the subject of a 102-page annotation in 50 A. L. R. 2d 766. In the numerous cases there cited from jurisdictions throughout the country there is a genuine concern on the part of the courts to foster an atmosphere of fair play and justice in the trial of criminal cases.

Two general rules seem to have evolved. In those instances where personal opinions of guilt are predicated upon the evidence, though frowned upon, they are not deemed to be prejudicially erroneous. Where opinions are expressed on facts outside the evidence, or are predicated on inferences based upon facts outside the evidence, such opinions have not been countenanced and the judgments in those cases have been reversed upon appeal.

We deem it sufficient to caution the prosecution on the use of such tactics which could taint an otherwise error free record.

It may be observed in this connection that it is provided in Canon 5 of the Canons of Professional Ethics, adopted by the American Bar Association, that ''the primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done.''

For the reasons stated the judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Common Pleas for a new trial.

*Judgment reversed.*

O'NEILL, C. J., DUNCAN and LEACH,* JJ., concur.
HERBERT, J., concurs in the judgment.
STERN, J., not participating.

JOHNSON, J., of the Seventh Appellate District, sitting for CORRIGAN, J.

---

*LEACH, J., participated in the hearing of this case sitting for MATTHIAS, J.

SCHNEIDER, J., concurring. The record in this case does not warrant the court's broad constitutional rule which overreaches any pronouncement of the Supreme Court of the United States.

There is no evidence that, prior to the trial, the defendant either was interrogated, or volunteered any statement, as to any matter relevant to the offense of which he was accused. Although he took the stand to offer an excuse for his alleged conduct, he was not cross-examined by the prosecutor, for example, as to whether he previously offered that excuse to the arresting officer. Thus, for the prosecutor to comment upon defendant's failure to offer that excuse is to assert in argument an assumed fact unsupported by any evidence produced on the trial and is ground for reversal regardless of *Miranda* or *Griffin*. See 53 American Jurisprudence 386; *Andrews* v. *State* (1912), 15 C. C. (N. S.), 241.

I do not quarrel with the rule of *Griffin* that a defendant in a criminal cause who chooses to exercise his right not to testify in his own behalf is protected against unfavorable comment to the jury on the exercise of his privilege. But, it does not follow, when an accused offers himself as a witness under oath in his own behalf, thereby placing his credibility in issue, that the Constitution prevents his credibility from being tested by evidence of past behavior connected with the offense for which he was on trial, as well as by evidence of prior adjudications of his transgressions against the law.