The State of Ohio, Appellant, *v* Young, Appellee.

(No. 70-333—Decided July 21, 1971.)

312

*Mr. John T. Corrigan,* prosecuting attorney, *Mr. Henry Szemer* and *Mr. Harvey R. Monck,* for appellant. *Mr. Anthony J. Cotton,* for appellee.

CORRIGAN, J. The gravamen of the claim of error in this appeal is whether the state's cross-examination of defendant concerning his decision to remain silent during in-custody interrogation by police constituted an infringement upon the exercise of that constitutional right.

As we noted in *State* v. *Laskey* (1970), 21 Ohio St. 2d 187, 194, nothing in *Griffin* v. *California* (1965), 380 U. S. 609, or *Miranda* v. *Arizona* (1966), 384 U. S. 436, "forbids cross-examination once the accused has taken the stand." However, the fact that a defendant decides to testify does not of itself provide the state an opportunity to cross-examine him as to whether he exercised the privilege to remain silent when accused of commission of a crime.

That question was settled in *State* v. *Stephens* (1970), 24 Ohio St. 2d 76, in which paragraph two of the syllabus reads:

"The right of silence of an accused, while singular in the constitutional grant, may be plural in application. That right, once invoked by an accused while under accusation, is not waived by reason of defendant testifying at the trial."

At the same time, the right to silence, once invoked, may later be waived. This was expressed in paragraph four of the syllabus of *Stephens* as follows:

"In the trial of a criminal case, reference by the prosecutor in his final argument to the jury to defendant's previously asserted silence at any stage of the accusatorial process, or to implications drawn therefrom, is not permissible *unless the record clearly demonstrates by the action or testimony of the defendant that he has waived the privilege against self-incrimination previously invoked.*" (Emphasis added.)

Inasmuch as a defendant by his testimony may waive

316

"the privilege against self-incrimination previously invoked," we must determine, in light of the record herein, whether defendant by his testimony waived that privilege.

An examination of the record, pertinent excerpts of which are set forth in the statement of facts above, discloses that, although the state did inquire about conversations between defendant and his counsel, in its initial cross-examination of defendant, it made no reference to the defendant's decision to exercise his right to remain silent during interrogation.

The first mention of the exercise by defendant of the privilege to remain silent was made during defendant's redirect examination by his own counsel.

As reason for such disclosure on redirect, defendant states:

"It was the inquiry of the prosecutor about his relationship with counsel before the jury which impelled clarification by defendant."

Defendant argues that "it was the cross-examination of the prosecutor interrogating defendant about his relationship with his attorney that clearly indicates the state initiated its own error."

We do not agree. Disclosure of the fact that defendant had conversations with his attorney prior to trial did not convey to the jury any information in respect to whether defendant had exercised his option to remain silent. Moreover, it does not necessarily follow, from the fact that defendant talked with his attorney, that he was advised to remain silent or that he chose to remain silent as a result of the conference with his attorney. Therefore, defendant's contention that the disclosure on redirect examination of the fact that he had remained silent during interrogation was "impelled" by the state is without merit. Consequently, we conclude that such disclosure was voluntary. In view of this, defendant may not complain about the prosecuting attorney's cross-examination concerning the exercise of his right to remain silent "* * * because he volunteered this information upon direct ex-

amination by his own counsel." *State* v. *Pollard* (1970), 21 Ohio St. 2d 171, 174.

Thus, where a defendant, on examination by his own counsel, testifies that he chose to remain silent during in-custody interrogation by police, such testimony results in waiver of the privilege against self-incrimination, and the prosecuting attorney may thereafter cross-examine defendant concerning his exercise of that privilege.

For the reasons stated, the judgment of the Court of Appeals is reversed and the judgment of the Court of Common Pleas is affirmed.

*Judgment reversed.*

SCHNEIDER, HERBERT, STERN and LEACH, JJ., concur.

O'NEILL, C. J., and DUNCAN, J., concur in the judgment.

DUNCAN, J., concurring. I am in disagreement with the reasoning of the majority that where a defendant, on direct examination by his own counsel, testified that he chose to remain silent during in-custody interrogation by police, such testimony results in waiver of the privilege against self-incrimination. As I view it, I do not find that defendant's testifying in this case affords a basis to deny the protection extended an accused in *State* v. *Stephens* (1970), 24 Ohio St. 2d 76. I do not believe that a defendant's mere explanation upon examination by his counsel, that he did not make a statement to the police because of the advice of counsel, affords a basis to deny the protection extended an accused in *State* v. *Stephens* (1970), 24 Ohio St. 2d 76. More than such an explanation is necessary to constitute a waiver. Upon re-direct examination the defendant testified to the general effect that he made no in-custody statement to the police upon the advice of counsel. The court limited the cross-examination of defendant revealing that he did refuse to make such a statement, and

nothing more, despite the prosecutor's attempt to inquire deeper. Objections by defense counsel were *sustained* to the following questions asked by the prosecuting attorney on recross-examination:

"Q. Now, you told us earlier you said you had nothing to hide; did not feel at that time, then, Mr. Young, that you had something to hide after you contacted your attorney?"

"Q. Up to that point you said yesterday you were co-operating with the police, weren't you?"

"Q. In any event, then, after you talked with Mr. Cotton did you cooperate with the police?"

"Q. You told them nothing further after that, isn't it true?"

As I read the record, the trial court correctly permitted cross-examination as to the fact surrounding the defendant's in-custody activity, but allowed no questions concerning his motive, or his counsel's motive, in remaining silent during this period.

In my view, the prosecutor's argument, rather than the state's cross-examination, produces a problem. The prosecutor argued:

"One of the most opportune times that Mr. Young had to justify the presence of any group of people at this apartment was when he talked with the police Officers Jackman and Albrecht, on the morning of Tuesday, April 9. What is the very first thing he said to them?

"He said he was at home because at that time—it establishes, anything that took place in this courtroom, that he himself didn't have a pre-determined alibi, a pre-determined story established. By telling the police officers that he was home indicates to us that right at that time he is still not, doesn't have anything, any system really working for him in order to get any consolidated testimony upon a certain point or a certain location for himself on the events of April 8th of 1968.

"* * *

"Where is all the cooperation that he manifested with the police department? Why, when the police department

after that told him and asked him if he wanted to give them a statement—you have all the testimony before this court, Mr. Cotton himself standing up and saying he exercised his constitutional rights, his right to remain silent.

"Ladies and gentlemen, the right to remain silent at this point when he indicated he cooperated up until that point until he finds out that they want him and want to know about his whereabouts because of the killing of Tracey Seales and Lee Seales, Jr., then he has constitutional rights?

"Ladies and gentlemen, I submit to you, take those facts into consideration and see where they lead you in the way of inference."

In *State* v. *Stephens, supra* (24 Ohio St. 2d 76), the prosecutor's argument found to give rise to prejudicial error was:

"Why did he not tell the police at the shopping center * * *.

"* * *

"Hey, look, this prescription that you found, this is a good one. This is a good prescription. I am getting it for a buddy. Why didn't he tell the police?

"You see what goes into determining guilty knowledge. Do you see what goes into intent? Do you see how you arrive at whether or not the fellow knew?"

In this case, defendant Young testified at trial and did not make a statement to the police upon the advice of counsel. In the *Stephens* case, defendant Stephens testified at trial; and there was no evidence as to whether or not counsel advised him to remain silent while in custody.

As the case narrows, the pivotal question becomes whether defendant's specific testimony furnished a basis for a holding that there was a waiver of the privilege against self-incrimination, permitting the prosecutor to argue the implications of defendant's in-custody silence.

Obviously, in *Stephens,* we found no waiver. The majority opinion in the instant case appears to hold the waiver complete because, on direct examination by his own coun-

sel, defendant testified that he chose to remain silent during in-custody interrogation by the police. I believe that a further analysis of the facts is essential to determine whether there has been such a waiver.

Stated another way, I believe that in final argument the state may not draw implications from an accused's previously asserted silence at any stage of the accusatorial process, notwithstanding the fact that defendant testified that he had remained silent on the advice of counsel, unless other facts indicative of a waiver are adduced.

However, I find no objection having been made to the prosecutor's argument in the record. Furthermore, although appellant complains about the state's argument, he does not set it up as a proposition of law for our review, nor did the Court of Appeals set forth such a reason for its reversal.

For the foregoing reasons, I concur in the judgment only.

O'NEILL, C. J., concurs in the foregoing concurring opinion.