OPINION
Defendant-appellant Brian J. Cricks appeals his convictions and sentences entered by the Stark County Court of Common Pleas on one count of felonious assault, in violation of R.C. 2903.11; four counts of retaliation, in violation of R.C. 2921.05; three counts of intimidation of a crime victim or witness, in violation of R.C. 2921.04; and one count of burglary, in violation of R.C. 2911.12. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
The Stark County Grand Jury returned four indictments against appellant on the aforementioned charges on October 15, 1999, November 19, 1999, December 23, 1999, and January 4, 2000. At his arraignment on each indictment, appellant entered pleas of not guilty to the charges contained in the particular indictment. The trial court consolidated the cases for trial. The matter proceeded to jury trial on April 18, 2000. The following evidence was adduced at trial. Canton City Police Officer Shawn Overdorf testified as he returned home to 421 Hazelett Street, N.W. on the evening of March 9, 1999, he observed appellant standing by a parked vehicle which had its hood opened. Officer Overdorf approached appellant and offered assistance. The officer gave appellant a pair of vice grips with which to clamp down the car battery. This action resolved the problem with appellant's vehicle. Overdorf told appellant he could leave the vice grips on Overdorf's porch the following day. As appellant was leaving, he turned to the officer and asked if Overdorf was a police officer with the City of Canton. Overdorf responded, "Yes." Appellant entered his vehicle and drove away. Two days later, on March 11, 1999, Angela Overdorf, the officer's sister, experienced trouble with her vehicle. Angela, Jeff Roby, her fiancé, and McKenzie, her daughter, lived with Officer Overdorf at the time. When Officer Overdorf examined Angela's car, he noticed the gas tank covers and the gas caps were off of Angela's, Roby's, and his vehicles. The officer then discovered sugar impacted into the opening of the gas tank of his sister's car. There was no sugar in either his or Roby's vehicle. Angela's vehicle was towed to a garage, where the gas tank was dropped and flushed. Officer Overdorf and his sister contacted the police, who took a report for criminal damaging. Officer Overdorf told the police he believed appellant could be a possible suspect. Sgt. Gary Shank, a detective with the Canton City Police Department, testified he received information from Scott Jones, Overdorf's backyard neighbor, appellant was responsible for the March 11, 1999 incident. On May 10, 1999, Sgt. Shank spoke with appellant. Appellant initially denied tampering with Angela's gas tank, but subsequently admitted his culpability, signed a waiver of his rights, and gave a statement. Thereafter, Sgt. Shank advised Overdorf of appellant's admission. Overdorf informed the sergeant he (Overdorf) would not press charges against appellant if appellant paid restitution in the amount of $250, within thirty days. Although he agreed to do so, appellant never made restitution. Cheri Busby, who lives next door to Scott Jones on Kennet Court, NW, in Canton, testified she was sitting on her front porch reading a book during the early morning hours of September 1, 1999, when she observed appellant exit a black Lexus, proceed to the front door of Scott Jones' house, where he banged on the front door and screamed for Jones to come outside. Busby was familiar with appellant as appellant's brother had previously resided in Scott Jones' house and she often saw appellant visiting his brother. When Jones did not respond to appellant's demands, appellant returned to the vehicle and left the area. Scott Jones testified he was working as security guard at the Raff Road Apple's Super Market when appellant entered the establishment to pick up his brother, who was also an Apple's employee. At that time, appellant told Jones he had a confrontation with the city cop who lived behind Jones and sugared his gas tank. Jones did not think much about appellant's statements until he learned, during a subsequent conversation with Officer Overdorf, someone had put sugar in the gas tank of Angela's vehicle. Jones advised Overdorf of the statements appellant made to him and later provided Sgt. Shank with the same information. Sometime after his conversation with Sgt. Shank, Jones was at the Canton Center Mall with his brother, Robert Jones, when they saw appellant. As appellant passed, he commented to the Jones brothers, "I'm not going to go to jail because of you mother fuckers." T., Vol. I at 262. Robert Jones also testified at trial. Like his brother, Robert knew appellant because appellant's brother formerly resided in the house where Scott Jones resided. At approximately 8:30 p.m., one evening in late September or early October, 1999, appellant arrived at Robert's home at Lincoln Avenue, N.W. in Canton. Appellant yelled at Robert and demanded he (Robert) come outside. Appellant wanted to fight Robert and commented about killing him. Robert testified appellant was upset because he (Robert) was going to testify against appellant. During the early morning hours of November 18, 1999, Robert Jones was walking on Lincoln Avenue toward his residence when a white Jeep Cherokee pulled up and stopped. Appellant and Christopher Wensel, appellant's co-defendant, exited the vehicle. Appellant and Wensel proceeded to beat Robert Jones, hitting and kicking him, resulting in Robert suffering from several bruised ribs. Appellant informed Jones the beating was because Jones was going to testify against him. Jeff Roby, the fiance of Angela Overdorf, testified he lived at the 421 Hazelett Street, N.W. with Angela, her daughter, and Officer Overdorf. He recalled the March 11, 1999 incident when sugar had been placed in the gas tank of Angela's vehicle. On June 19, 1999, Roby confronted appellant, who was near Roby's truck in the driveway of the Hazelett Street residence. Roby observed sugar around the gas tank of his truck. He contacted the police and gave a written statement. In July, 1999, Sgt. Shank showed Roby a photo array. Roby immediately, and without hesitation, identified appellant as the individual he confronted by his truck on June 19, 1999. Thereafter, Roby provided Sgt. Shank with a taped statement. Roby also testified regarding an incident on September 7, 1999. Roby, Angela, and McKenzie were asleep in McKenzie's bedroom when Roby heard one of his dogs ranting and raving. The dog was not barking, so Roby merely looked up and laid back down. Immediately thereafter, he heard what sounded like the front door opening. When Roby heard the door squeak, he ran down the hallway and observed an individual peeking around the door into the house. Roby hit the door, causing the individual to fall back onto the porch. Roby identified appellant as the intruder. On November 14, 1999, Roby's dogs were pacing and looking out the window. Roby looked out the window and saw an individual near his truck by the gas tank. Roby went outside to stop the intruder. As Roby walked down the porch steps, another individual dove toward Roby, taking him down by the knees. Thereafter, a group of men began to assault Roby, beating and kicking him. The following evening, November 15, 1999, Roby was wheeling the garbage cans to the curb when a car pulled up and stopped. A gentlemen exited the car and stated, "What's up?" Roby responded, "What's up," and proceeded up the driveway toward the house. As Roby turned toward the house, he was pushed from behind. Roby was able to knock down the man, but another individual hit him in the back with a baseball bat. Roby "proceeded to really get pummeled" by the man. Tr. at 148. Roby made his way into the house and telephoned the police after the assailants fled. At approximately 9:00 p.m. that evening, the telephone rang. Roby answered, and the caller laughed and said, "You think they'll catch me; they'll never catch me. I'm invincible. * * * death to all the mother fucking Overdorfs, death to all the fucking Overdorfs." Tr. II at 168. On November 17, 1999, someone knocked at the front door of 421 Hazelett Street, NW. Roby looked out the window, but did not see anyone. Roby opened the front door and stuck out his head. As he stepped outside, someone punched him on the side of the head. Roby shoved and hit the individual until the assaulter left the premises. Roby identified this individual as appellant. Thereafter, another individual arrived from the side of the house and assaulted Roby with a baseball bat. Roby was unable to identify this attacker. Christopher Wensel, appellant's co-defendant, testified for the State. Wensel recalled being with appellant on several occasions during November, 1999. Wensel stated appellant had the idea of going to the Roby/Overdorf residence and "start trouble." Tr. I at 325. Appellant informed Wensel he had had a previous confrontation with a police officer and "what goes around comes around." Id. at 332. Wensel admitted he, appellant, Vester Fraser, appellant's friend, and a fourth man went to the 421 Hazelet Street, N.W. residence and beat Roby with a baseball bat. Appellant informed Wensel he (appellant) had put sugar in the gas tanks of the Overdorf and Roby vehicles. Wensel was with appellant on the evening of November 18, 1999. Wensel, appellant, and a third individual, who was driving, observed Robert Jones walking on the side of the road. The driver stopped the vehicle; Wensel and appellant jumped out and beat up Jones. Wensel had no idea the person he was assaulting was Robert Jones, who he had known for approximately three years. Appellant presented the testimony of Albert Simia, the owner of Alcar's Lounge, a local bar. Simia testified he is a friend of appellant's father, and has known appellant and his father for over fifteen years. On the evening of November 15, 1999, Simia observed appellant in his establishment. Simia observed appellant on two occasions that evening, once between 5:00 and 6:00 p.m., and the other at approximately 8:00 p.m. On cross-examination, Simia admitted he was busy cooking and only looked out of the kitchen into the bar on those two occasions. He also testified his establishment is only a block away from Hazelett Street. After hearing all the evidence and deliberations, the jury found appellant guilty of four counts of retaliation, one count of felonious assault, and two counts of intimidation of a crime victim or witness. The jury found appellant not guilty of one count of intimidation and one count of burglary. The trial court sentenced appellant to determinate terms of imprisonment of one year for each of the intimidation counts and two of the retaliation counts. The trial court ordered these terms to be served consecutively to each other. The trial court merged the felonious assault charge with the third retaliation count, and sentenced appellant to a determinate term of seven years imprisonment. The trial court ordered the seven year term run concurrently with the one year terms on the two intimidation counts and two of the retaliation counts. On the fourth retaliation count, the trial court sentenced appellant to a determinate term of two years, and ordered the term to run consecutively to the other terms. It is from these convictions and sentences appellant appeals, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO ARGUE AND PRESENT EVIDENCE REGARDING APPELLANT'S PRIOR BAD ACTS.
 II. THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION, AND THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE STATE OF OHIO'S CONDUCT DURING TRIAL CONSTITUTES PROSECUTORIAL MISCONDUCT.
 IV. OTHER ERRORS WERE COMMITTED AT TRIAL NOT RAISED HEREIN BUT APPARENT ON THE RECORD.
 I
In his first assignment of error, appellant maintains the trial court erred in permitting the prosecutor to argue and present evidence relative to his prior bad acts. Evid.R. 404 contains the rule governing the admissibility of character or other acts evidence. R.C. 2945.59, which embodies the principles of Evid.R. 404(B), provides: In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
In State v. Smith (1992), 84 Ohio App.3d 647, the Second District Court of Appeals explained: Other act evidence is also permitted * * * to prove the defendant's scheme, plan, or system when it forms the immediate background of the offense alleged and it would be difficult to prove that the accused committed the crime alleged without also introducing evidence of other acts. When the other acts demonstrate criminal conduct they should be "`so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.' " State v. Wilkinson (1980), 64 Ohio St.2d 308, 317 * * * Absent that nexus, the other criminal act, whether like or unlike the one charged or similar or dissimilar to it, cannot be used to prove the scheme, plan, or system employed by the accused to commit the offense for which he or she is on trial.
Id. at 667.
Herein, appellant takes issue with the prosecutor's allegation of his other bad acts, which he alleges served to establish he is a "bad man." Appellant refers to the State's direct examination of Christopher Wensel, during which Wensel stated he heard appellant "has a hit out on me in jail." Tr. I at 335. The trial court sustained Attorney Steve LoDico's, appellant's counsel, objection to the statement. Attorney LoDico immediately moved for a mistrial, which the trial court denied. Appellant submits he was prejudiced because the trial court overruled his motion for a mistrial, and failed to immediately give a curative instruction to the jury. The exchange between the prosecutor and Wensel proceeded as follows:
 PROSECUTOR: Have you talked with [appellant] since these incidents in November?
 WENSEL: Uh, there was a couple of incidents we ran into each other at the jail.
PROSECUTOR: Has he said anything to you about this case?
WENSEL: Yes, he has.
PROSECUTOR: What did he tell you?
 WENSEL: He called me a snitch on one occasion, and I've heard through other inmates —
APPELLANT'S COUNSEL: Objection.
WENSEL: — that he has a hit out on me in jail.
 TRIAL COURT: Sustained as — to what other inmates may have said.
Tr. I at 335-336.
Initially, we note Wensel's answer to the prosecutor's question was non-responsive. We agree with appellant the trial court should have given a limiting instruction to the jury at that time. However, we find the fact such instruction was not contemporaneous with the sustaining of the objection was not prejudicial. The general instruction given to the jury with respect to sustained objections was sufficient. A jury is presumed to follow the trial court's instructions, including curative instructions. State v. Garner (1995), 74 Ohio St.3d 49, 59. Because the trial court sustained appellant's objection, we find no abuse of discretion in the trial court's failure to grant appellant's motion for mistrial. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant raises insufficiency and manifest weight of the evidence claims. In State v. Jenks (1981),61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus. When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction were based upon insufficient evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. Appellant specifically claims the State failed to establish venue. Although venue is not a material element of a crime charged, it is a fact which must be proven. In State v. Headley (1983), 6 Ohio St.3d 475, the Ohio State Supreme Court noted: Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant. State v. Draggo (1981),65 Ohio St.2d 88, 90 * * * The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case. State v. Dickerson (1907), 77 Ohio St. 34, * * *, paragraph one of the syllabus
Id. at 477.
Additionally, the trial court has broad discretion to determine the facts which would establish venue. Toledo v. Taberner (1989),61 Ohio App.3d 791. "Express evidence to establish venue is not necessary, if, from all of the facts and circumstances in the case, it is established beyond a reasonable doubt that the crime was committed in the county and state named in the indictment." State v. Khong (1985),29 Ohio App.3d 19,* * *, paragraph five of the syllabus. The Supreme Court of Ohio has permitted venue to be established by the totality of the facts and circumstances of the case. * * * We agree that evidence as to one specific address, the VFW parking lot, would not necessarily support a conclusion that venue had been established. However, Officer Manley testified that he was on duty for the Cadiz Police Department, that the VFW was on East Market Street, and that nearby were the offices of GTE and the Cadiz Fire Department. Further, Officer Manley testified that appellant was walking to use a pay phone at the Shurfast Store. Therefore, the trial court did not err in concluding that the crime had occurred in the city of Cadiz, in Harrison Count, in the state of Ohio.
State v. Shuttlesworth (1995), 104 Ohio App.3d 281, 286-287.
In the instant action, the testimony of Officer Overdorf and Jeff Roby established 421 Hazelett Street, NW, at which many of the incidents occurred, is located in Canton, Ohio. Neighbors Scott Jones and Cheri Busby also testified their homes were in Canton, Ohio. Scott Jones recalled appellant's threatening him and his brother at the Canton Center Mall. During the Robert Jones' testimony, he stated he lived on West Tuscarawas, a block from his brother, and as he was walking down Lincoln Way, he was assaulted by appellant and another individual. Finally, Officer Jim Daniel of the Canton Police Department stated he responded to a call at 421 Hazelett Street, N.W. on November 15, 1999, after an assault on Jeff Roby. Officer Daniel testified Hazelett Street is a few blocks from downtown Canton. We find the aforementioned evidence established beyond a reasonable doubt the offenses were committed in Stark County, Ohio. Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant asserts claims of prosecutorial misconduct. Appellant refers to four occasions during trial which he argues amount to prosecutorial misconduct. First, the prosecutor's direct examination of Christopher Wensel, during which the witness stated he heard from other inmates appellant has a hit out on him. Second, the prosecutor's direct examination of Jeff Roby, during which the witness referred to an uncharged incident of tire-slashing. Next, the prosecutor's direct examination of Sgt. Shank, during which the prosecutor's question and the witness's answer implied a fatality during the assault of Jeff Roby with a baseball bat. Finally, the prosecutor's closing argument, in which she stated Christopher Wensel was going to prison for the assault on Robert Jones. The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and, if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained-of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144. This Court recognizes a trial is adversarial in nature and generates both tension and turmoil, State v. Stephens (1970), 24 Ohio St.2d 76 * * *, and trials cannot be "squeezed dry of all feeling." State v. Keenan (1993), 66 Ohio St.3d 402, 409. As such, we concede the prosecutor may "strike hard blows, [but the prosecutor] is not at liberty to strike foul ones." Berger v. United States (1935), 295 U.S. 78, 88, 55 S.Ct. 629,633, 79 L.Ed. 1314, 1321. With these basic premises as controlling, we will address the four problem areas. Appellant claims the portion of the State's direct examination of Wensel as set forth in assignment of error one, supra, amounted to prosecutorial misconduct. In our discussion of this issue, we noted Wensel's answer to the prosecutor's question was non-responsive. Additionally, the trial court sustained appellant's objection to the answer. Accordingly, we find this conduct did not prejudice appellant. Appellant also claims the prosecutor committed misconduct by eliciting testimony from Jeff Roby, inferring appellant had slashed the tires of his truck. This act was not alleged against appellant in any of the indictments. The prosecutor asked Roby about the vandalism which occurred to the vehicles. Roby explained sugar had been placed in the gas tanks and the tires of his truck had been slashed. Attorney LoDico objected to the comment. After a side bar, the trial court instructed the jury to ignore "any comments about slashing of tires or things of that nature, because the State has not alleged that in the facts relative to the indictments that were filed in this, ah, case." Tr. II at 131. In light of the cautionary instruction, we find appellant cannot establish he was prejudiced by Roby's statement. Appellant's third claim of prosecutorial misconduct stems from the prosecutor's direct examination of Sgt. Shank. The prosecutor asked the sergeant whether he ever investigated an assault in which a baseball bat was used as a deadly weapon. Sgt. Shank answered affirmatively. Attorney LoDico objected and asked the trial court to strike the remark from the record. The trial court found the question and answer to be improper, and sustained the objection. The trial court instructed the jury to disregard the question and answer. As such, we find appellant has failed to establish prejudice. Appellant's fourth claim of prosecutorial misconduct relates to the prosecutor's statement in her closing argument Christopher Wensel was going to prison for the assault on Robert Jones. Attorney LoDico objected, noting Wensel had yet to be sentenced. The trial court agreed and again instructed the jury not to consider the statements. Thereafter, the prosecutor continued her closing arguments relative to Wensel's testimony without incident. We find this remark did not have a prejudicial effect on appellant. Appellant's third assignments of error is overruled.
 IV
In his final assignment of error, appellant claims there are errors which are apparent on the record but not raised in his brief. We disagree. Appellant cites to this Court to the United States Supreme Court's decision in Anders v. California (1966), 386 U.S. 738,87 S.Ct. 1396, 18 L.Ed.2d 493. In Anders, appointed appellate counsel found his indigent client's case to be wholly frivolous and without merit, and wrote a letter to the appellate court to that effect. The United States Supreme Court held it was error for counsel to advise the appellate court by letter without filing any motion or brief on behalf of his client. The case sub judice is distinguishable from Anders in that appellant's appellate counsel filed a brief and, in fact, assigned three other errors for review. Therefore, an Anders claim under this assignment of error has no merit. Appellant's fourth assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
 _______________ Hoffman, J.
Edwards, P.J. and Gwin, J. concur