OPINION
{¶ 1} Defendant-Appellant Morris Jefferson appeals both his convictions for trafficking in a counterfeit controlled substance and trafficking in cocaine and his sentences for those crimes. For the following reasons, we affirm.
 {¶ 2} Detective Steve Lane began investigating Jefferson as a street level drug dealer after two confidential informants advised Lane that they could buy crack cocaine from Jefferson. On August 15, 2001, Det. Lane and other ACE Drug Task Force members met with one of those informants, Scott McCracken. Officers patted McCracken down to ensure that he was not carrying any contraband and then wired him so that the transaction could be monitored and recorded. Officers provided McCracken with $125 worth of photocopied bills in order to purchase crack from Jefferson. Det. Lane then dropped McCracken off in the alley behind Jefferson's house.
 {¶ 3} Det. Lane saw and heard McCracken talking to Jefferson. McCracken greeted Jefferson by name, and the two discussed a drug transaction. Both Det. Lane and McCracken recognized Jefferson from their prior contacts with him. McCracken refused to leave the area with Jefferson in order to get the crack from a third party. Instead, McCracken gave Jefferson the money, and Jefferson walked over to a person hidden in the bushes, who ran away immediately afterwards. Jefferson returned with what ended up being fake crack. After the transaction another detective picked up McCracken. After McCracken turned over the contraband, the detective patted him down to ensure that he did not have any additional contraband.
 {¶ 4} On September 11, 2001 Det. Lane and the Task Force met with the other informant, Tracy Ary. After Ary was patted down, wired, and provided with money, Shannon Turman from a citizen's law enforcement group drove Ary to the area of Jefferson's house. A video camera was set up in Turman's car. Ary recognized Jefferson, whom she had known for about eight years, and Det. Lane heard her greet Jefferson by his first name. Det. Lane also heard the two discuss and make a drug transaction. After the transaction, Ary returned to Lane and gave him the crack that she had purchased from Jefferson. No other contraband was found. Det. Grile retrieved the video tape from Turman's car. Ary identified both herself and Jefferson in the video tape of the transaction.
 {¶ 5} As a result of these events, Jefferson was charged with trafficking in a counterfeit controlled substance for the August 15, 2001 sale and with trafficking in cocaine for the September 11, 2001 sale. On February 19-20, 2002 a jury trial was held. Jefferson testified that he had never sold drugs and that the State's witnesses were either mistaken or lying. Additionally, he called an alibi witness, Victor Green, regarding the second sale. However, Green had come and gone from Jefferson's home that afternoon, and the sale could have taken place while Green was away. At the close of the trial, the jury found Jefferson guilty of both charges. Jefferson filed a timely appeal.
 I. Appellant's first and second assignments of error: {¶ 6} In his first assignment of error, Jefferson argues that his trial counsel was ineffective for failing to object to some of the prosecutor's questions and for failing to object to the introduction of audio and video tapes into evidence. In his second assignment of error, Jefferson claims that trial counsel was ineffective for failing to object to parts of the prosecutor's closing argument. We will consider each instance individually.
 {¶ 7} In order to obtain a reversal of a conviction based on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that this deficient performance prejudiced the defendant to such a degree as to deny the defendant a fair trial. State v. Green, 90 Ohio St.3d 352, 375, 2000-Ohio-182, citingStrickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052. The defendant bears the burden of proof on both prongs because a properly licensed attorney is presumed competent. State v. Jackson (1980),64 Ohio St.2d 107, 111, 413 N.E.2d 819. Additionally, there is a strong presumption that defense counsel's decisions amounted to trial tactics that do not raise to the level of ineffective assistance. State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990),497 U.S. 1011, 110 S.Ct. 3258. Thus, the defendant must show that but for counsel's deficient performance, there is a reasonable probability that the results of the proceedings would have been different. Id., at paragraph 3 of the syllabus.
 A. Leading questions. {¶ 8} Jefferson argues that trial counsel was ineffective for failing to object to three separate instances of the prosecutor asking leading questions. First, Jefferson claims that in questioning one of the police officers, the prosecutor labeled Jefferson as a "street drug dealer" who put the neighborhood in fear. Second, he claims that the prosecutor improperly "testified" in his questioning about the details of the drug transactions. Third, he argues that the prosecutor led Ary to agree that Jefferson is not only a drug dealer, but that he is also a drug abuser. We disagree that counsel's decision not to object constituted ineffective assistance of counsel.
 {¶ 9} Evidence Rule 611(C) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." This broad exception places the decision of whether to allow leading questions within the sound discretion of the trial court. State v. Jackson, 92 Ohio St.3d 436, 449,2001-Ohio-1266, citations omitted; State v. Coy (March 22, 1995), Montgomery App. No. 14415, citations omitted. As a result, the Ohio Supreme Court has held that the failure to object to leading questions does not constitute ineffective assistance of counsel. Jackson, supra, at 449; Coy, supra, citing State v. Campbell, 69 Ohio St.3d 38, 52-53,1994-Ohio-492, 630 N.E.2d 339. This is because the failure of counsel to object may have been the result of trial strategy. Coy, supra; State v.Lloyd (March 31, 1999), Montgomery App. No. 15927. In the instant case we cannot say that trial counsel's failure to object to these questions fell below an objective standard of reasonable representation.
 B. Hearsay. {¶ 10} Jefferson alleges that trial counsel was ineffective for failing to object to the introduction of hearsay testimony from Det. Lane regarding what the informants said to him. Specifically, Jefferson complains that counsel's failure to object allowed Det. Lane to testify that the informants told him that they knew that they could buy drugs from Jefferson because they had done so before. Additionally, he argues that Det. Lane should not have been permitted to testify about the details of the two drug sales.
 {¶ 11} Even if the testimony was hearsay, it is clear to us that any failure by counsel to object was not sufficiently prejudicial. The informants both testified that they had told police that they could buy drugs from Jefferson and that they had done so before. Additionally, both McCracken and Ary testified about the details of the drug transactions. Therefore, Jefferson was able to cross examine not only Det. Lane, but also McCracken and Ary. Any objection by defense counsel to this allegedly hearsay testimony would have served no practical purpose. See,e.g., State v. Broadnax (Feb. 16, 2001), Montgomery App. No. 18169.
 C. Repetitive Questions. {¶ 12} Jefferson complains that trial counsel should not have allowed the prosecutor to ask Det. Lane twice about how sure he was that Jefferson was the one selling drugs. While such an objection to the second question could have been sustained, we cannot say that counsel was ineffective for choosing not to object. Had counsel objected, it would merely have further focused the jury's attention on the information. Thus, counsel's decision not to object was an acceptable trial tactic.
 D. Introduction of Audio and Videotapes. {¶ 13} Jefferson insists that trial counsel was ineffective for allowing the introduction of the video and audio tapes without a proper foundation. We disagree.
 {¶ 14} Det. Lane explained that both McCracken and Ary were wired for audio recordings and that there was a video camera in Turman's car. Det. Grile testified that he recovered the video tape from Turman's car. McCracken identified his voice on tape, and Ary identified both her voice and image on the audio and video tape. Both McCracken and Ary were recorded addressing Jefferson by name, and both identified Jefferson as being the individual on the tapes with them. We believe that this was a sufficient foundation to allow the introduction of the tapes, and no objection was warranted.
 E. Closing argument. {¶ 15} Finally, Jefferson claims that his trial counsel was ineffective for failing to object to improper comments during the prosecutor's closing argument. Specifically, he alleges that counsel should have objected when the prosecutor offered his opinion that Victor Green "didn't exactly tell the truth" and when the prosecutor asked the jurors to consider the fear of the community while deliberating Jefferson's guilt.
 {¶ 16} While a prosecutor may not express to the jury his personal opinion about the credibility of any witness, he may argue all reasonable inferences from the record and therefore comment on the credibility of witnesses based upon their testimony in open court. State v. Stephens
(1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773; State v. Mundy (1994),99 Ohio App.3d 275, 304, 650 N.E.2d 502, citing State v. Price (1979),60 Ohio St.2d 136, 140, 398 N.E.2d 772. Considerable latitude is allowed in closing argument. State v. Apanovich (1987), 33 Ohio St.3d 19, 24,514 N.E.2d 394.
 {¶ 17} When the prosecutor said that Green "didn't exactly tell the truth," he was pointing out that while Jefferson claimed that the State's witnesses were all lying and mistaken, it was Green whose testimony was of questionable veracity. The prosecutor was encouraging the jury to reject Green's testimony and to accept the testimony of the State's witnesses. We cannot find that counsel was ineffective for choosing not to object to this isolated statement.
 {¶ 18} A prosecutor may legitimately call for justice or ask jurors to do their duty. State v. Bey, 85 Ohio St.3d 487, 494,1999-Ohio-283. However, a prosecutor may not ask a jury to punish a particular defendant for all of the crimes committed in the community. To the extent that this happened in the instant case, defense counsel could have objected and had that objection sustained. Nevertheless, in light of the overwhelming evidence of Jefferson's guilt, we cannot find that counsel's failure to object amounts to ineffective assistance.
 {¶ 19} In summary, we conclude that Jefferson's trial counsel's performance was neither deficient nor prejudicial to his case. Jefferson's first two assignments of error are without merit and are therefore overruled.
 II. Appellant's third assignment of error: {¶ 20} Jefferson asserts that the trial court erred in ordering consecutive sentences. He does not deny that the trial court made the findings required by R.C. § 2929.14(E)(4) to support consecutive sentences. Instead, he argues that the trial court was wrong in reaching its conclusions. We disagree.
 {¶ 21} Revised Code Section 2929.14(E)(4) states in pertinent part:
 {¶ 22} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 23} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 24} During the sentencing hearing, the judge noted that the testimony of McCracken, Ary, Green, and Jefferson himself revealed that Jefferson had been involved in drug trafficking for at least eight years. Accordingly, Jefferson poses a high risk of recidivism. Additionally, despite having been convicted by a jury of his peers, Jefferson continued to deny his guilt, and he showed no remorse for his crimes. As a result of these factors, the judge concluded that consecutive sentences were necessary in order to protect the public. The judge further found that minimum sentences would demean the seriousness of the offenses and would not adequately protect the public from further crimes by Jefferson or others. The judge reiterated his reasoning in his written sentencing order. We find that the trial court judge made the required findings supporting the imposition of consecutive sentences. Therefore, Jefferson's third assignment of error is overruled.
 {¶ 25} Accordingly, having overruled all three of Jefferson's assignments of error, the judgment of the trial court is affirmed.
FAIN, J. and GRADY, J., concur.