[Cite as *State v. Huff*, 2011-Ohio-5668.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96475**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAMARR M. HUFF

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540069

**BEFORE:**   Blackmon, J., Kilbane, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   November 3, 2011

**ATTORNEY FOR APPELLANT**

Ryan J. Bokoch
Law Offices of Ryan J. Bokoch, LLC
4791 Memphis Avenue
Cleveland, Ohio 44144


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Daniel South
Mark Mahoney
Assistant County Prosecutors
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


PATRICIA ANN BLACKMON, J.:

{¶ 1} Appellant Lamarr M. Huff appeals his conviction for domestic violence and assigns the following two errors for our review:

{¶ 2} "I. **Appellant's conviction is against the manifest weight of the evidence.**"

{¶ 3} "II. **Appellant was denied a fair trial due to prosecutorial misconduct by the assistant prosecutor stating his personal belief as to the credibility of the witness.**"

**{¶ 4}** Having reviewed the record and pertinent law, we affirm Huff's conviction. The apposite facts follow.

## Facts

**{¶ 5}** The Cuyahoga County Grand Jury indicted Huff on one count each for felonious assault, attempted felonious assault, and domestic violence with two notices of a prior conviction specifications. The state dismissed the first count prior to trial. Huff entered a not guilty plea on the remaining counts and the matter proceeded to a jury trial.

## Trial

**{¶ 6}** After dating for six months, the victim and Huff moved in together in December 2009. Although the victim had two children, after Huff lived with them for about a month she eventually moved the children to her mother's house because her relationship with Huff "was kind of rough," and she did not want them involved in the "situation."

**{¶ 7}** The victim testified that on July 23, 2010, she returned home from work around 8:30 p.m to find Huff angry. He had found photographs of a man that the victim worked with saved on her computer. According to the victim, Huff was very jealous, and she was not permitted to have any male friends. Huff grabbed the victim's cell phone and began looking through the telephone numbers. After finding the telephone number of the man, Huff punched the victim with a closed fist on the left side of her jaw, knocking her to the ground. When she fell, her arm hit the heating register, causing her to scratch her arm. The victim was stunned by the punch and began to cry. Huff

apologized to her and blamed the other man for his behavior, stating "he made me do it. He made me break my promise to you." After they calmed down, the victim wanted to get cigarettes, gas, and food, but Huff would not allow her to leave and grabbed her by the neck of her shirt; he would allow her to go if he went with her. She stated at this point, she had a bad headache and her jaw hurt.

{¶ 8} They returned home around midnight, had consensual sex, then went to sleep. The next morning, when the victim woke up she was sore and had a headache. As she was leaving to return her father's truck, she noticed that Huff was "not his normal self" because he was not speaking to her. After she left, she realized she left her daughter's hair spray in the apartment and returned to get it and told Huff, "not to start when I got home." As she was taking the elevator downstairs, she realized she "couldn't do this anymore."

{¶ 9} She went to the safety of the apartment manager's office. Jacqueline Zappitelli, the property manager for the apartments, testified that the victim came into her office crying, upset, and "very afraid," and told her what had happened. Zappitelli noticed that Huff had a "lump" on the side of her face. Zappitelli locked the door and told Huff that she needed to call the police. While the victim was on the phone with the police, Zappitelli saw on the security camera that Huff was in the lobby and appeared to be looking for someone. He was looking out the windows and even tried to peer through the office mail slot.

{¶ 10} When the police arrived, they found Huff hiding below a stairway. The police took photos of the victim's injuries showing marks on her jaw, face, and arm, and swelling to the left side of her face. The victim went to the emergency room and along with Ibuprofen for the swelling, she was given Percocet for an inflamed eardrum.

{¶ 11} Huff made a telephone call to the victim from the jail that was recorded. The tape recording was played to the trial court. On the tape, Huff is heard telling the victim that she only told the officers regarding what he did and not what she had done. The victim stated that he was referring to the fact that he believed the victim had been cheating on him.

{¶ 12} Based on the evidence presented, the jury found Huff not guilty of attempted felonious assault, but guilty of domestic violence. The trial court sentenced Huff to two years in prison.

## Manifest Weight of the Evidence

{¶ 13} In his first assigned error, Huff argues that his conviction for domestic violence was against the manifest weight of the evidence. Specifically, he contends that the victim's testimony was not credible.

{¶ 14} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

{¶ 15} **"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In**

***Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."**

{¶ 16} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

{¶ 17} Huff contends the victim gave contradictory evidence because: the victim told the detective one of the marks on her neck was a hickey, but at trial she testified that none of the marks was a hickey; and, the victim testified that she left the apartment to return the truck to her father, but told the apartment manager she left the apartment to get something out of the truck. The jury most probably found these inconsistencies to be insignificant in light of the victim's testimony that Huff punched her with a closed fist and the photographs corroborated her testimony by depicting the swelling to the jaw area of her face. Several witnesses also corroborated that the victim's jaw was red and swollen.

{¶ 18} Huff also argues that if he had hit her with a closed fist, as the victim contended, the injury would have been more significant. However, the victim testified that that night she had to chew her food on the opposite side of her mouth and had a bad headache. The next day, her head was still pounding and she had pain in her ear. The emergency room gave her Ibuprofen for the swelling to her jaw and also gave her Percocet for her inflamed eardrum. Therefore, there is evidence that she suffered an injury.

{¶ 19} Huff also contends the victim's behavior was not consistent with a domestic violence victim. He points to the fact that after the alleged punch, the victim and he went out for cigarettes and to a bar to eat. However, the victim testified that Huff would not allow her to leave the house alone, and she was out of cigarettes and had not eaten dinner.

Therefore, the only way she could get food and cigarettes was by having Huff accompany her.

{¶ 20} It is true the victim had consensual sex with Huff; however, Detective Scharschmidt testified that it was not unusual for a domestic violence victim to stay in the relationship. Moreover, it appears she may have thought the situation had concluded. But then, the next morning, Huff was still acting angry. She then decided she had "had enough." We conclude the jury did not lose its way or create a manifest injustice by convicting Huff. Accordingly, Huff's first assigned error is overruled.

### Prosecutorial Misconduct

{¶ 21} In his second assigned error, Huff contends the prosecutor engaged in misconduct during closing argument by telling the jury that he believed the victim.

{¶ 22} In general, prosecutors are given considerable latitude in opening statements and closing arguments. *State v. Ballew* (1996), 76 Ohio St.3d 244, 255, 667 N.E.2d 369. In closing argument, a prosecutor may comment on "'what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, quoting *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773. A prosecutor may not express his personal belief or opinion as to the credibility of a witness, the guilt of an accused, or allude to matters that are not supported by admissible evidence. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883.

**{¶ 23}** Here, it is undisputed that the prosecutor made an improper remark by stating that he believed the victim. However, once it is determined the remark was improper, we must determine "whether [the remark] prejudicially affected substantial rights of the defendant." *State v. Hessler*, 90 Ohio St.3d 108, 125, 2000-Ohio-30, 734 N.E.2d 1237, quoting *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. We conclude given the overwhelming evidence of Huff's guilt that the comment did not prejudice the jury's verdict.

**{¶ 24}** Moreover, the trial court did sustain defense counsel's objection to the comment and issued a curative instruction to the jury immediately stating, "What [the prosecutor] believes or doesn't believe is insignificant, is of no consequence in your determination. It's whether you believe her or not. And you alone assign to the witness the credibility that their testimony deserved in your judgment." Tr. 316. A jury is presumed to follow the instructions, including curative instructions, given by a trial judge. *State v. Charley*, Cuyahoga App. No. 82944, 2004-Ohio-3463, ¶51, citing *State v. Loza*, 71 Ohio St.3d 61, 75, 1994-Ohio-409, 641 N.E.2d 1082. Accordingly, Huff's second assigned error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON,   JUDGE

MARY EILEEN KILBANE, A.J., and
LARRY A. JONES, J., CONCUR