OPINION
{¶ 1} Defendant-appellant, Ricky D. Linville ("appellant"), appeals from the August 12, 2004 judgment entry of the Franklin County Court of Common Pleas, based on his conviction of three counts of rape. For the reasons that follow, we affirm.
 {¶ 2} By indictment filed February 24, 2004, appellant was charged with one count of kidnapping, in violation of R.C. 2905.01, a felony of the first degree, and four counts of rape, in violation of R.C. 2907.02, all of which are felonies of the first degree. Each count included a firearm specification pursuant to R.C. 2941.145, and stemmed from the August 30, 2003 rape of Amanda Greathouse ("Greathouse").
 {¶ 3} Appellant's case proceeded to trial on June 6, 2004, and concluded on June 10, 2004. The following relevant facts were adduced at trial. On August 29, 2003, appellant and Greathouse made plans to go out to dinner at a Steak Shake restaurant located on Hamilton Road in Columbus, Ohio. Appellant picked Greathouse up from her residence and went back to his home to change his clothes and get some money before heading to the restaurant. While at appellant's home, the two sat in appellant's living room and engaged in conversation. Appellant introduced Greathouse to his father.
 {¶ 4} At one point, appellant grabbed Greathouse by her wrists, and started kissing her neck and her belly button. Greathouse testified that appellant tried to kiss her on her lips, but she did not kiss him on the lips. Greathouse told appellant that she wanted him to take her home. Appellant told her to wait. He went to his bedroom to get his shoes. When appellant did not return to the living room, Greathouse went to appellant's bedroom and noticed that he was asleep on his bed. Greathouse testified that she "slapped [appellant] on his face a little bit to wake him up and he woke up." Greathouse again told appellant to take her home. Appellant told Greathouse that he had a "buzz" and to give him a few minutes to get himself together.
 {¶ 5} When appellant stood up, Greathouse testified that appellant "threw me down on the bed like with my wrist. He was like over top of me. He said, what would you do if I raped you." (Tr. 29.) Greathouse testified that she told appellant that she would kick him "in his balls." Appellant let Greathouse get up off of the bed and she returned to the living room. Greathouse testified that she repeatedly told appellant that she wanted to go home. Appellant told Greathouse "to get the hell out of his house" because appellant felt that Greathouse was being disrespectful. Appellant refused to let Greathouse use his telephone to call for a ride home.
 {¶ 6} Greathouse left appellant's home and went to the nearby residence of Kathy Marinacci ("Marinacci") who testified that Greathouse asked her to call the police because the man that Greathouse was supposed to go out with had gotten drunk and she could not wake him to get a ride home. Marinacci testified that she called the police, but the police informed her that Greathouse would have to call a cab for a ride home. Marinacci testified that Greathouse never asked her to call any of Greathouse's friends or her parents.
 {¶ 7} Greathouse left Marinacci's house and returned to appellant's residence hoping that appellant would give her a ride home. Greathouse testified that when appellant answered the door, he was wearing only white boxer shorts. Appellant agreed to take Greathouse home. Greathouse entered appellant's residence and stood by his entertainment stand. Appellant went to his bedroom. Greathouse got tired of standing and sat down on the couch waiting for appellant. Appellant returned to the living room with a shotgun. Greathouse testified that appellant told her "not to say anything, don't scream, don't cry." (Tr. 33.) Greathouse testified that at that moment she was "stunned and shocked and speechless."
 {¶ 8} Appellant pointed the gun at Greathouse's forehead and told her to get up. He grabbed her by her hair and told her to go to the bedroom. Appellant told Greathouse to take her clothes off. Greathouse removed her clothes. Appellant laid the gun down, removed his clothes and performed cunnilingus on Greathouse. After appellant was finished, Greathouse got up and went to the bathroom to clean up. Appellant followed her and stood by the bathroom door.
 {¶ 9} When Greathouse exited the bathroom, appellant forced Greathouse to perform fellatio on him. Appellant then laid Greathouse on the bed and engaged in vaginal intercourse. Greathouse testified, "* * * I was on all fours, like my hands and my knees and he proceeded to have sex. And that's when I remember falling over and hitting my head on the wall. And that's when he was on top of me doing it that way. And I remember my body going numb and my face was kind of smudged. My body — I had pain going through my right side. I couldn't get up. I was kind of like pinned with my arms underneath me and him on top of me. I couldn't move at all." (Tr. 36.) Greathouse testified that appellant attempted anal intercourse, but was unsuccessful because she kept moving. Greathouse identified a bottle of lotion that appellant used for lubrication before engaging in vaginal intercourse.
 {¶ 10} When questioned by the State as to why she did not scream, Greathouse responded that she does not know why she didn't scream. She stated, "[i]t didn't really come across my mind." (Tr. 38.) Greathouse testified that she didn't tell appellant to stop, but that she told him they could not engage in sexual intercourse because she had a boyfriend. She further testified that after appellant had finished having intercourse with her he told her, "you know I just raped you, don't you." (Tr. 39.) Appellant and Greathouse got dressed and appellant agreed to take Greathouse home. Before appellant got to Greathouse's home, he asked her if he was going to end up in jail. Greathouse replied "no" because she was scared that if she gave a different answer, appellant would not have taken her home.
 {¶ 11} Upon entering her house, Greathouse testified that she went to her room and cried for a few minutes. She then called Roger Cooper ("Cooper"), a close friend, to ask Cooper what she should do. Greathouse's mother heard her crying, entered her room and asked her what happened. Greathouse testified that her mother called the police.
 {¶ 12} Officer Delbert T. Chapman was dispatched to Greathouse's home. Upon arriving, Officer Chapman met with Greathouse and she told the officer what happened. Greathouse took Officer Chapman to appellant's residence and pointed the house out to the officer. Officer Chapman contacted the sexual abuse squad and then took Greathouse to Grant Hospital. Officer Chapman went back to appellant's residence and secured the location for a search warrant.
 {¶ 13} At Grant Hospital, Debra J. Zang ("Zang"), a Sexual Assault Nurse Examiner ("SANE") Coordinator employed by Ohio Health, examined Greathouse. Zang took a history from Greathouse about the assault. Zang testified that the record of the examination of Greathouse was an accurate reflection of the examination of Greathouse that she conducted on August 30, 2003. Zang noted that she wrote down Greathouse's history as Greathouse was talking.
 {¶ 14} During Zang's physical examination of Greathouse, she noted that Greathouse had a bruise on the left side of her neck, but did not have any other trauma to her body. There were no marks on Greathouse's wrist from being restrained, no head injury from hitting her head against the wall, and no evidence of hair loss or looseness from having her hair pulled. Zang testified that the findings of the external examination were consistent with the history given by Greathouse. Zang testified that the genital examination of Greathouse was normal and there was no trauma noted. Zang noted that "probably 85 percent of the time [there is] no injury whatsoever in sexual assault cases." (Tr. 105.)
 {¶ 15} Prior to her examination by Zang, Detective Eric Wooten interviewed Greathouse. Detective Wooten testified that Greathouse was visibly upset, crying, scared and shaking. Based on his interview with Greathouse, Detective Wooten returned to appellant's residence to proceed with the investigation. Upon execution of a search warrant, the detective recovered "two pillowcases, a fitted sheet, a blue and red comforter, a bottle of lotion, a New England firearm .20 gauge shotgun, a white towel and a multi-colored washcloth and numerous photographs." (Tr. 143.) Semen was found on the fitted sheets. Detective Wooten testified that no semen, spermatozoa, or pubic hair was collected from the sealed rape kit.
 {¶ 16} On June 10, 2004, following their deliberations, the jury found appellant guilty of three counts of rape, to wit: cunnilingus (count two), fellatio (count three), and vaginal intercourse (count four) in violation of R.C. 2907.02, all felonies of the first degree. The jury acquitted appellant of kidnapping (count one) and of rape involving anal intercourse (count five). On August 6, 2004, the trial judge imposed a prison term of five years for each of counts two, three, and four, to be served concurrently, and awarded appellant 162 days of jail time credit.
 {¶ 17} On appeal, appellant has set forth the following three assignments of error for our review:
Assignment of Error One
The trial court erred when it entered judgment against the appellant, when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
Assignment of Error Two
Trial counsel rendered ineffective assistance in not preparing the jury for appellant not testifying, providing proof of one count not established by the state, and in failing to effectively cross examine a witness and argue evidence to the jury, resulting in the denial of the right to a fair trial and the right to effective assistance of counsel under the sixth and fourteenth amendments to the united states constitution as well as article one, section ten of the ohio constitution.
Assignment of Error Three
The trial court erred when it sentenced appellant to non-minimum sentences based on facts not found by the jury or admitted by appellant.
 {¶ 18} In his first assignment of error, appellant challenges the sufficiency and weight of the evidence for his three convictions for rape.
 {¶ 19} The Supreme Court of Ohio outlined the role of an appellate court presented with a sufficiency of evidence argument in State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 20} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, supra, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 434 N.E.2d 1356. Thus, a jury verdict will not be disturbed on the sufficiency of the evidence unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749;State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 21} Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence.Thompkins, supra, at 387. In so doing, the court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Ibid, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. See, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548, 664 N.E.2d 622. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 22} R.C. 2907.02, establishing the crime of rape, states in pertinent part: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."[1] R.C. 2907.01(A) defines "sexual conduct" as, "[v]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex."
 {¶ 23} Appellant points to inconsistencies in Greathouse's testimony and asserts that such inconsistencies render insufficient the evidence of rape. Specifically, appellant draws our attention to (1) Greathouse's inconsistent testimony as to whether or not she phoned appellant on the night of their date; (2) Greathouse's inability to remember the sequence of events on the night of the alleged rape; (3) the lack of physical evidence to corroborate Greathouse's story; and (4) Greathouse's inconsistent testimony as to whether or not appellant ejaculated.
 {¶ 24} As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. (Citation omitted.) In the present case, it was within the province of the jury to evaluate Greathouse's credibility. See State v. Lakes (1964), 120 Ohio App. 213,217, 29 O.O.2d 12, 201 N.E.2d 809 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.") See, also, Statev. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. Greathouse's testimony sufficiently demonstrated that she and appellant engaged in intercourse, fellatio and cunnilingus, all of which fall under the definition of "sexual conduct" for purposes of the rape statute. Furthermore, Greathouse's testimony that appellant pointed a gun to her head, pulled her from the couch by her hair and pinned her to the bed, demonstrates purpose and force. See State v. Schaim (1992),65 Ohio St.3d 51, 600 N.E.2d 661. Viewing the evidence in a light most favorable to the prosecution, the evidence adduced at trial provided a sufficient basis upon which the jury could reasonably conclude that appellant committed rape. The convictions were also supported by the manifest weight of the evidence. Accordingly, appellant's first assignment of error is overruled.
 {¶ 25} In his second assignment of error, appellant claims that his trial counsel was ineffective because counsel (1) failed to review with the jury, during voir dire, the law regarding appellant's right not to testify; (2) failed to properly cross-examine Greathouse and Zang; and (3) failed to make an adequate closing argument.
 {¶ 26} In order to succeed on his claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, appellant must show that counsel's performance was deficient. Second, he must show that such deficiency actually prejudiced the defense. In order to show deficient performance, appellant must demonstrate that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment. Ibid. Appellant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. at 690.
 {¶ 27} There is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v. Louisiana (1955), 350 U.S. 91, 101,76 S.Ct. 158, 100 L.Ed. 83. However, an error by counsel, even if unreasonable under prevailing professional standards, does not warrant setting aside a judgment unless the error affected the outcome of the trial. Strickland, at 691. Thus, under the second prong of Strickland,
appellant must show that counsel's deficient performance prejudiced the defense. Id. This factor requires showing that but for counsel's unprofessional errors, a reasonable probability existed that the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 28} First, appellant argues that his trial counsel was ineffective because he failed to question the jury during voir dire about their views of a defendant who did not testify at trial. "Voir dire is largely a matter of strategy and tactics." State v. Lindsey (2000),87 Ohio St.3d 479, 489, 721 N.E.2d 995. "The conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." State v. Evans (1992), 63 Ohio St.3d 231, 247,586 N.E.2d 1042, rehearing denied, 63 Ohio St.3d 1450, 589 N.E.2d 393, certiorari denied, 506 U.S. 886, 113 S.Ct. 246, 121 L.Ed.2d 179. Furthermore, great deference is given to decisions by trial counsel during voir dire because trial counsel sees and hears jurors and is in the best position to determine whether voir dire questions are needed.State v. Bradley (1989), 42 Ohio St.3d 136, 143-144, 538 N.E.2d 373;State v. Mason (1998), 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932.
 {¶ 29} In the present case, although appellant's counsel did not question the jury during voir dire about appellant's right to not testify, counsel chose to address the issue during closing arguments. Counsel told the jury:
We, members of the jury, have no burden of proof. None. During the course of a criminal case, should we so choose, we don't have to ask a question of one single witness. We do not have to present one single witness.
We did not present to you the testimony of Ricky Linville. And the judge is going to give you an instruction regarding that. He is going to instruct you that the law that applies to jurors is that you are not permitted to hold that against us. It is not allowed.
(Tr. 188-189.)
 {¶ 30} Additionally, the trial court instructed the jury that appellant had a right not to testify pursuant to the constitutions of the United States and of the State of Ohio and that the jury could not take appellant's right not to testify into consideration during its deliberations. "A presumption exists that a jury has followed the instructions given to it by the trial court." See State v. Nichols (June 27, 2000), Franklin App. No. 99AP-1090. See, also, State v. Murphy
(1992), 65 Ohio St.3d 554, 584, 605 N.E.2d 884. Viewing the entire transcript, we cannot say that trial counsel's manner of conducting voir dire was deficient or ineffective such that appellant was denied a fair trial.
 {¶ 31} Next, appellant argues that his trial counsel was ineffective in cross-examining Greathouse and Zang. He argues that the State failed to question Greathouse about the act of fellatio, but his own trial counsel elicited the information from Greathouse on cross-examination. The extent and scope of cross-examination clearly falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. See State v. Campbell (2000), 90 Ohio St.3d 320,738 N.E.2d 1178; State v. Otte (1996), 74 Ohio St.3d 555, 660 N.E.2d 711, accord State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Moreover, appellant's trial counsel was successful in eliciting inconsistencies in Greathouse's testimony. Appellant has failed to show that trial counsel's cross-examination of Greathouse was ineffective.
 {¶ 32} Appellant also argues that trial counsel was ineffective in failing to cross-examine Zang in sufficient detail about injuries, other than vaginal bruising, that might be found in other rape victims. But the decision to forego additional cross-examination could have been predicated on the irrelevancy of the testimony. Moreover, appellant has failed to articulate how trial counsel's failure to cross-examine Zang in more detail has prejudiced him. Upon review of the record, we find no basis to conclude that appellant's trial counsel was ineffective in cross-examining this witness.
 {¶ 33} Lastly, appellant argues that during closing arguments trial counsel omitted "the most powerful arguments." (Appellant's brief, page 11.) Specifically, appellant argues that trial counsel should have argued to the jury that although Greathouse knew that appellant's father was in appellant's home, she never screamed or called out for help; that the sexual act between appellant and Greathouse was consensual and not rape; and that Greathouse's fear of returning home late after having sex with appellant and facing her parents was motivation to fabricate a rape story.
 {¶ 34} We have reviewed trial counsel's closing argument. We conclude that appellant's trial counsel's comments were sound trial strategy based upon the evidence presented to the jury. Appellant has not shown that trial counsel's performance in closing argument was deficient. See Statev. Smith (2000), 89 Ohio St.3d 323, 328, 731 N.E.2d 645 (courts normally defer to counsel's judgment on trial strategy). See, also, State v.Banks, Franklin App. No. 03AP-1286, 2005-Ohio-1943 (defense counsel has wide latitude during closing arguments); State v. Stephens (1970),24 Ohio St.2d 76, 53 O.O.2d 182, 263 N.E.2d 773; State v. Cooper
(1977), 52 Ohio St.2d 163, 6 O.O.3d 377, 370 N.E.2d 725, certiorari granted, judgment vacated on other grounds (1978), 438 U.S. 911,98 S.Ct. 3137, 57 L.Ed.2d 1154. Additionally, appellant has not demonstrated a reasonable probability that, but for trial counsel's allegedly deficient performance at closing argument, the outcome of the trial would have been different.
 {¶ 35} Because appellant has failed to meet the two-prong test ofStrickland, with respect to each allegation of ineffective assistance of counsel, appellant's second assignment of error is overruled.
 {¶ 36} In his third assignment of error, appellant argues that based on the facts in the indictment and those supporting the jury's verdict, the trial court erred in sentencing him to a non-minimum sentence. In support of his argument, appellant maintains that, pursuant to Blakelyv. Washington (2004), ___ U.S. ___, 124 S.Ct. 2531, rehearing denied (2004), 125 S.Ct. 21 and Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435, he was entitled to a jury determination of those factual findings upon which the trial court based its sentence of five years as to each of appellant's rape convictions. Absent such jury findings, he maintains, the trial court was required to sentence him to no more than the statutory minimum of three years on each count.
 {¶ 37} In Apprendi, the United States Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. A sentence that is greater than the statutory maximum and that is not based upon facts admitted by the defendant or found by a jury beyond a reasonable doubt, violates the defendant's right to a trial by jury as guaranteed by the Sixth Amendment to the United States Constitution. In Blakely, the United States Supreme Court defined "`statutory maximum' for Apprendi
purposes" as "the maximum sentence a judge may impose solely on the basisof the facts reflected in the jury verdict or admitted by the defendant."Blakely, supra at 2537. (Emphasis sic.)
 {¶ 38} We reject appellant's Blakely-based argument, just as we have done in a recent line of cases beginning with State v. Abdul-Mumin,
Franklin App. No. 04AP-485, 2005-Ohio-522. In that case, we held that:
Ohio's sentencing scheme does not encroach upon the traditional and constitutionally required role of the jury in finding those facts that fix the upper limit of a defendant's punishment for a particular offense. Rather, the upper limit, or in Blakely terms, the "statutory maximum" sentence to which one accused of a felony knows he will be exposed upon walking through the courtroom door, is established by statute. R.C. 2929.14(B) does not allow judge-made findings to enhance a defendant's punishment beyond the maximum sentence corresponding to the class of offense of which he is convicted or to which he pleads guilty.
Id. at ¶ 12. See, also, State v. Sieng, Franklin App. No. 04AP-556, 2005-Ohio-1003; State v. Cockroft, Franklin App. No. 04AP-608, 2005-Ohio-748; State v. Smith, Franklin App. No. 04AP-859, 2005-Ohio-2560; and State v. Satterwhite, Franklin App. No. 04AP-964, 2005-Ohio-2823.
 {¶ 39} In the present case, the jury's verdict authorized a sentence of three to ten years for each of the three counts of which appellant was convicted. R.C. 2929.14(A)(1). The trial court imposed a sentence of five years on each count, which is well below the "statutory maximum" forApprendi purposes, which is 10 years. Thus, appellant's sentence did not run afoul of Blakely and Apprendi, and did not violate his right to a trial by jury. Accordingly, his third assignment of error is not well-taken and is overruled.
 {¶ 40} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin Count Court of Common Pleas.
Judgment affirmed.
McGrath and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] R.C. 2907.02(A)(2).